THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEFFERY SMITH, Defendant-Appellant.

First District (2nd Division) No. 1—98—3246

Opinion filed March 30, 2001.

Michael J. Pelletier and Michael C. Bennett, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Mary L. Boland, and Suzanne T. Collins, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McBRIDE delivered the opinion of the court:

Following a jury trial on remand from this court, defendant-appellant, Jeffrey Smith, was found guilty of attempted murder and was sentenced to 30 years' imprisonment on June 25, 1998. Defendant appeals the verdict contending that the trial court denied him his due process right to be present when the court responded to a note the jury sent out during deliberations. Further, defendant claims that the trial court's response to the note was legally insufficient. He also maintains that the 30-year sentence imposed on him for attempted murder was excessive. The State claims all issues have been waived because defendant failed to object at the time of the alleged error and failed to raise the issues in a posttrial motion.

Detailed facts related to defendant's criminal conduct were set out by this court in our order of May 31, 1996, *People v. Smith*, No. 1—94—1756 (unpublished under Supreme Court Rule 23). We state only those facts relevant to the issues raised by this appeal. Defendant's attempted murder conviction arises out of a gang-related drive-by shooting that resulted in the death of a young man and severe injury to a young woman on October 22, 1991. The shooting occurred in the area of 79th Street and Eggleston in Chicago. The evidence at trial established that defendant was the driver of the vehicle used in the drive-by shooting, which was a measure of retaliation against rival gang members who had thrown bricks and bottles at

defendant's car earlier that day. The record reveals that up to 20 gunshots from semi-automatic weapons were fired by passengers inside defendant's automobile. While no gang members were injured as a result of the shooting, Robert Foreman, Jr., age 21, suffered a fatal gunshot wound to the chest and Meeka Johnson, age 17, suffered a severe abdominal injury.

At the close of evidence, the jury was given instructions for the crimes of first degree murder with respect to Robert Foreman, Jr., and attempted first degree murder with respect to Meeka Johnson. During jury deliberation on April 13, 1998, the jury sent a note to the judge asking "can the [defendant] be charged or found with a lesser charge (2nd degree/involuntary)[?]" Both defense counsel and defendant were absent from the courtroom at the time the note was sent out, while the assistant State's Attorneys were physically present in the courtroom. Upon receipt of the note, the trial judge contacted defense counsel via telephone and asked him how he wished to respond to the note. Counsel for both parties and the trial judge agreed on a response and ultimately sent it to the jury. The response stated: "The law applicable to the case is contained in the instructions you have been given. You are to follow those instructions."

Before actually giving the above response, the trial judge indicated that defendant should be made aware of the note sent from the jury and asked defense counsel how defendant should be notified. Defense counsel said that he would like to talk to defendant. Pursuant to that request, the judge arranged for a private phone line so that defendant could discuss the contents of the note with counsel. The judge further made himself available to defense counsel in the event that he wished to make changes to the response based upon counsel's conversation with defendant. Defense counsel stated that he had no objection to the language used in the response. The following day, the jury found the defendant guilty of attempted first degree murder and not guilty of the murder charge.

At a subsequent hearing the trial judge sentenced defendant to 30 years' imprisonment. Before imposing sentence, the judge noted that defendant's conduct caused a severe amount of injury and a great deal of suffering. The judge also said that a sentence of 30 years was a necessary deterrent to others. Further, the judge observed that defendant set in motion the drive-by shooting which caused one death and injury to another person. The judge noted in mitigation that defendant had no prior criminal history, had a good school record, and had adjusted well to prison. Thereafter, defendant was sentenced to 30 years' imprisonment.

We now turn to the question of whether defendant has waived

review of the trial judge's response to the jury's note on the basis that defense counsel failed to object to the alleged error or to properly raise such error in a posttrial motion. The State claims that because defense counsel neither made an objection at the time of the alleged error nor stated the reason as a basis for error in a posttrial motion, the question has been waived on review. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988); *People v. Williams*, 173 Ill. 2d 48, 85, 670 N.E.2d 638 (1996); *People v. Reid*, 136 Ill. 2d 27, 38, 554 N.E.2d 174 (1990). We note that defense counsel did not object to the response given to the jury at the time of the alleged error. Further, defendant did not file any posttrial motion contending that defendant's absence from the courtroom during the drafting of the response note constituted grounds for a new trial. In *Reid*, our supreme court stated:

"If a party fails to object at trial or to raise the issue in its posttrial motion, the party effectively waives the issue for appellate review. [Citation.] Where a defendant acquiesces in the circuit court's answer to the jury's question, the defendant cannot later complain that the circuit court abused its discretion. [Citations.] These waiver rules serve at least two purposes. First, timely objections allow the circuit court to promptly correct any error. [Citation.] Second, a party who fails to object cannot obtain the advantage of receiving a reversal by failing to act. [Citation.]" *Reid*, 136 Ill. 2d at 38.

In this case, when the note in question was sent from the jury, the trial judge contacted defendant's counsel via telephone. The assistant State's Attorneys remained with the judge and the following conversation, in relevant part, took place while defendant and his counsel were absent from the courtroom:

"THE COURT: Jeffery Smith. Are you there Mr. Heaston [defense attorney]?

MR. HEASTON: Yes.

THE COURT: Can you hear us all right?

MR. HEASTON: Yes.

THE COURT: All right. The note reads: Can the [defendant] be charged or found with a lesser charge (2nd degree/involuntary)[?]

MR. HEASTON: I got that message.

THE COURT: Okay. How do you want me to answer this?

MR. HEASTON: Well Judge, I think that's a question of law. That certainly was a given. I didn't proffer that because I didn't think that second degree would pertain to this case.

THE COURT: I agree with you. So how do you want me to answer this?

MR. HEASTON: I don't know. What do you suggest?

THE COURT: Well, let's see. State, how do you want me to answer this?

MR. MURPHY [Assistant State's Attorney]: The answer is, no, isn't it?

* * *

MR. HEASTON: I don't have a pat answer or any thing, judge. I just feel that maybe you should say something to the effect that they have to follow the law as instructed.

* * *

THE COURT: I can—I suppose I can go out in the courtroom and read [defendant] the note and then let you [Mr. Heaston] talk to him on the phone, I suppose.

* * *

THE COURT: *** How about this; does either side have any objection to this? The law that is applicable to this case is contained in the instructions you have been given. You are to follow those instructions.

MR. HEASTON: I would agree with that.

* * *

THE COURT: *** All right. What do you want me to do with your client?

* * *

MR. HEASTON: I'd like to talk *** to Jeffrey, if I could.

THE COURT: Okay. We can arrange that. Can you hook him [defendant] up out there in the back?

THE SHERIFF: I'll get him [defendant] a private phone just for you, Mr. Heaston.

* * *

THE COURT: *** Take him [defendant] out of the lockup and let him call in the back on that line with you [Mr. Heaston]. And after you talk to him, then I'll—I'll bring him out, and I'll ask him if you discussed this with Mr. Heaston ***.

THE COURT: If you want, after talking to him [defendant], if you want to change anything [to the response], *** just tell Mary [the sheriff] that you want to talk to me again, and we'll change something okay?

MR. HEASTON: Okay, Judge.

THE COURT: Okay. Very good. Otherwise, that's the way it [the response] will go back. ***

MR. HEASTON: Okay.

THE COURT: No objection?

MR. HEASTON: No objection."

Considering this dialogue, we find the above language in *Reid* particularly persuasive because the record reveals that defense counsel stated "no objection" to the language contained in the response to the jury. Further, the trial judge gave defense counsel an opportunity to make any corrections to the response after he conversed with defen-

dant. Defense counsel never stated that he wished to change the response.

Most significantly, defense counsel never raised an objection that an error had occurred with respect to the response based on defendant's absence from the courtroom. The record reveals that three subsequent notes were sent from the jury in addition to the note at issue. The trial judge ensured defendant's presence in the courtroom while the contents of and responses to those notes were discussed. At no time did defense counsel ever object to the fact that defendant had not been present in the courtroom while a response to the first note had been prepared. Because defendant failed to raise an objection and did not file a posttrial motion, he has waived his right to protest the trial court's response to the jury with regard to the first note. *Reid*, 136 Ill. 2d at 38.

Nevertheless, defendant claims that his absence from the courtroom at the time the note was discussed was a denial of a substantial right which falls under the plain error rule. He relies upon Illinois Supreme Court Rule 615(a), which states in pertinent part:

> "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill. 2d R. 615(a).

Our supreme court has held:

> "An exception to the waiver rule permits review of plain error. [Citation.] However, this exception does not operate as a general savings clause: it may be invoked only when the evidence is closely balanced or the alleged error is so serious that it deprived the defendant of a fair trial. [Citation.]" *People v. Cloutier*, 178 Ill. 2d 141, 164, 687 N.E.2d 930 (1997).

In our view, the evidence in this case was not closely balanced. Several eyewitnesses to the shooting identified defendant as the driver. The most significant testimony favorable to defendant came from Maurice Brumfield, a friend of the defendant since grammar school, who testified that defendant attempted to refrain Robert Short from shooting his weapon from the vehicle. Weighed against the eyewitness testimony and the defendant's motive for retaliation, however, we conclude that the evidence was not closely balanced.

■ The waiver exception is also limited to cases in which the plain error affected substantial rights. *People v. Kitchen*, 159 Ill. 2d 1, 42-43, 636 N.E.2d 433 (1994). Based on controlling authority, we conclude that defendant's absence from the courtroom at the time the first note was sent out by the jury did not deprive defendant of a fair trial and did not affect his substantial rights. Where the defendant or his at-

torney had knowledge of the court's communication with the jury at the approximate time of the jury's inquiry, plain error has not been found and the waiver doctrine has been applied. *People v. Pierce*, 56 Ill. 2d 361, 363-64, 308 N.E.2d 577 (1974); *People v. Lowery*, 177 Ill. App. 3d 639, 643, 532 N.E.2d 414 (1988); *People v. Patterson*, 163 Ill. App. 3d 370, 372-73, 516 N.E.2d 642 (1987). Here, the error defendant now complains of is that he was not present in the courtroom when the jury sent out the first note. The record reveals, however, that defendant's counsel was immediately made aware of the contents of the note and was allowed to participate in drafting a response. Defense counsel was also permitted to contact the defendant and inform him of the note prior to submission of the response. Because defendant and his counsel were aware of the jury's note and able to participate in the response, we determine that defendant's absence from the courtroom did not affect a substantial right. We therefore conclude that defendant has waived his right to raise the error of defendant's absence as the basis for a new trial.

Waiver aside, we find the trial court did not err by responding to the note when it stated, "[t]he law applicable to this case is obtained in the instructions you have been given. You are to follow those instructions." Defendant argues that his constitutional right to be present in person was denied when the trial court responded to the jury's note. U.S. const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 2, 8. The primary cases relied upon by defendant are *People v. Childs*, 159 Ill. 2d 217, 636 N.E.2d 534 (1994), and *People v. McDonald*, 168 Ill. 2d 420, 660 N.E.2d 832 (1995). In *Childs*, the jury sent out a note to the trial court's bailiff during jury deliberations. The trial judge was contacted at a restaurant where he was dining with the assistant State's Attorneys on the case. The note was read to the judge which stated: "Can the defendant be guilty of armed robbery and voluntary manslaughter or involuntary manslaughter or must murder be the only option with armed robbery?" *Childs*, 159 Ill. 2d at 225. The judge instructed the deputy to give the following response: "You have received your instructions as to the law, read them and continue to deliberate." *Childs*, 159 Ill. 2d at 225. The judge then informed the prosecutors of the question, but made no effort to contact defense counsel. *Childs*, 159 Ill. 2d at 225.

In *Childs*, the supreme court concluded that "[a] criminal defendant has a constitutional right to a public trial, and to appear and participate *in person and by counsel* at all proceedings which involve his substantial rights [citation]." (Emphasis added.) *Childs*, 159 Ill. 2d at 227; *McDonald*, 168 Ill. 2d at 459. "That right to be present is violated only when the defendant is excluded at a time when a hearing is being

conducted which involves his substantial rights." *People v. Collins*, 184 Ill. App. 3d 321, 334, 539 N.E.2d 736 (1989). "A communication between the judge and the jury after the jury has retired to deliberate, except one held in open court and in the defendant's presence, deprives defendant of those fundamental rights. [Citation.]" *Childs*, 159 Ill. 2d at 227. Relying on *Childs*, defendant claims that once a defendant has shown that his right to be present was violated, the burden is on the State to show the error was harmless. *Childs*, 159 Ill. 2d at 228. Defendant further contends that the presence of his counsel was insufficient to satisfy the absolute requirement that he be present at every critical stage of the proceeding.

The State distinguishes *Childs* on the basis that no *ex parte* communication occurred in the instant case. According to the State, the trial judge's effort to contact defense counsel via telephone eliminated any contention that an *ex parte* communication occurred in this case. We agree. As the State correctly notes, our supreme court has condoned the trial court's use of a telephone to contact the parties for purposes of determining a response to a jury question. *Reid*, 136 Ill. 2d at 34. Defendant claims that *Reid* is distinguishable because the defendant's presence in the courtroom was not in issue. While we agree with defendant on that point, the significance of *Reid* is that the supreme court allowed the use of a telephone as an appropriate means of contacting the parties for the purpose of determining a response to a jury's question.

We do not agree with defendant that his absence from the courtroom amounted to plain error. The record reveals that the trial judge contacted defense counsel via telephone upon receipt of the jury's note. Defense counsel was allowed an adequate opportunity to assist in responding to the note. Further, defense counsel was allowed to discuss the contents of the note with defendant and was given the opportunity to make changes before the trial judge submitted the response to the jury. Defense counsel was also asked if he had an objection to the language in the response and he said no. Under these facts, we fail to see how defendant was prejudiced or how the trial court committed plain error when defense counsel was immediately informed of the contents of the jury note and was permitted to participate in formulating a response. As noted above, the trial judge in *Childs* unilaterally responded to the jury note. He then informed the assistant State's Attorneys of his response and failed to contact counsel representing the defendant. *Childs*, 159 Ill. 2d at 225. The *ex parte* communication that occurred in *Childs* did not occur in this case and defendant was not prejudiced by his absence from the courtroom where his counsel, via telephone, had been informed of the jury note and had assisted in forming a response.

We next turn to the question of whether the trial court erred by giving the particular response it gave to the jury's question. On this point, defendant relies on language set forth in *Childs* which states:

"A trial court may exercise its discretion and properly decline to answer a jury's inquiries where the instructions are readily understandable and sufficiently explain the relevant law, where further instructions would serve no useful purpose or would potentially mislead the jury, when the jury's inquiry involves a question of fact, or if the giving of an answer would cause the court to express an opinion which would likely direct a verdict one way or another. [Citation.] However, jurors are entitled to have their inquiries answered. Thus, the general rule is that the trial court has a duty to provide instruction where it has posed an explicit question or requested clarification on a point of law arising from the facts about which there is doubt or confusion. [Citation.] *** If the question asked by the jury is unclear, it is the court's duty to seek clarification of it. [Citations.] The failure to answer or the giving of a response which provides no answer to the particular question of law posed has been held to be prejudicial error." *Childs*, 159 Ill. 2d at 228-29.

Defendant argues that the trial court's response amounted to plain error because it failed to address the jury's confusion. Specifically, defendant contends that the jury's question concerning the applicability of a lesser sentence indicated that it may have been struggling with defendant's culpability for the conduct of Robert Short. It is undisputed that Short was the shooter while defendant was the driver of the vehicle used in the shooting. Defendant argues that the jury may have questioned his culpability based on testimony offered that he returned to the territory of rival gang members to see a man named "Peanut" who would order rival gang members to stop throwing things at his car. Also, testimony in the record indicated that defendant attempted to pull Short back into the vehicle once he began shooting. Further, defendant notes that the jury's confusion is illustrated by a logically inconsistent verdict finding defendant not guilty of murder, yet guilty of attempted murder. Based on the principles set forth in *Childs*, defendant claims that the trial court committed plain error and that his conviction for attempted murder should be reversed.

Despite the assertions made by defendant, we conclude that the trial court properly exercised its discretion in responding to the jury as it did. The question posed by the jury was whether the defendant could be convicted of a different charge. No instructions were given to the jury on second degree murder or involuntary manslaughter, and the defense agreed that those instructions did not apply to the facts of

the case. Instructions on the charges of first degree murder and attempted first degree murder were provided to the jury. When the jury submitted the note, defense counsel himself admitted that, "I didn't proffer instructions on second degree murder or involuntary manslaughter because I didn't think that second degree would relate to this case." "It is well settled that both an accused and the State are entitled to have the jury instructed as to the law applicable to their respective theories of the case, provided some evidence supports the particular theory." *People v. Brown*, 243 Ill. App. 3d 170, 173, 612 N.E.2d 14 (1993). If the trial judge had answered the jury's question any other way, new theories of second degree murder and involuntary manslaughter would have been introduced. The State points out that no evidence was heard on second degree murder or involuntary manslaughter and that the trial judge's answer concerning a new charge could have potentially misled the jury. Moreover, we find that a different response would have served no useful purpose, could have misled the jury, and could have caused the court to express an opinion which would have likely directed a verdict one way or another. *Childs*, 159 Ill. 2d at 228-29. Thus, we agree that the trial judge appropriately exercised his discretion in responding to the jury's question.

Although the jury was requesting an instruction on how to find defendant guilty of a different charge, we do not find this necessarily indicates jury confusion. This is unlike the question posed by the jury in *Childs* which clearly indicated jury confusion, "whether defendant could be found guilty of armed robbery and either voluntary or involuntary manslaughter, or if a finding of guilt of armed robbery mandated a 'guilty of murder' verdict." *Childs*, 159 Ill. 2d at 229. In this case, the jury was properly given instructions on the crimes of first degree murder and attempted first degree murder. In its response to the note, the trial court properly advised the jury that the law it had been provided was applicable to the case and that it should continue to deliberate. Although an explicit question was asked in the jury's note, the trial judge, with the consensus of counsel for defendant and the State, responded that proper instructions had been provided and that the jury should continue deliberations. On these facts, we do not find a plain error made by the trial court because of the response given.

■ We now address whether defendant waived his right to challenge the trial court's sentence of 30 years' imprisonment based on his conviction of attempted first degree murder. We apply an abuse of discretion standard of review when evaluating a sentencing order. *People v. Maldonado*, 240 Ill. App. 3d 470, 485, 608 N.E.2d 499 (1992).

Under the Unified Code of Corrections, the applicable sentencing

range for first degree attempted murder is between 6 and 30 years in the penitentiary. 720 ILCS 5/8—4(c)(1) (West 1996); 730 ILCS 5/5—8—1(a)(3) (West 1996). The State contends that defendant has waived his right to challenge the sentence by failing to raise the issue by objection and by posttrial motion. "The failure to make a timely objection at trial and to renew it in a post-trial motion operates as a waiver of a right to raise the issue as a ground for reversal on review. [Citation.]" *People v. Herrett*, 137 Ill. 2d 195, 209, 561 N.E.2d 1 (1990); *Enoch*, 122 Ill. 2d at 186; *Williams*, 173 Ill. 2d at 85; *Reid*, 136 Ill. 2d at 38; *People v. Reed*, 177 Ill. 2d 389, 393, 686 N.E.2d 584 (1997); *People v. Center*, 198 Ill. App. 3d 1025, 1029, 556 N.E.2d 724 (1990). The record reveals that no objection to the 30-year sentence was made by defense counsel. Further, defendant concedes that he did not file a posttrial motion to reduce the length of the sentence. He contends the failure to file such motion was attributable to the ineffectiveness of his trial counsel. Because of this allegedly deficient representation, defendant claims that he was prejudiced and that the waiver doctrine should not apply to the sentence in this case. In addition, defendant claims that the excessive sentence so adversely effected his substantial rights that the plain error rule applies.

We are not persuaded by defendant's claim that, based on the ineffectiveness of his trial counsel, the waiver doctrine should apply to his sentence of 30 years' imprisonment. Defendant claims that he was sentenced on June 25, 1998, five years after section 5—8—1(c) of the Unified Code of Corrections was amended to require a motion to reduce the sentence 30 days after it has been imposed. 730 ILCS 5/5—8—1(c) (West 1996). Because this requirement was in place at the time of sentencing, defendant suggests that his counsel was ineffective for failing to file a motion to preserve the sentencing issue. Defendant relies on *People v. Eddmonds*, 101 Ill. 2d 44, 65, 461 N.E.2d 347 (1984), where our supreme court elected to consider the impropriety of testimony, to which defendant failed to object and thereby waived, based on the ineffective assistance of counsel. The court recognized that "[i]t should be noted that defendant complains now of incompetency only during the sentencing hearing, and no complaint is raised of ineffective assistance of counsel during the trial." *Eddmonds*, 101 Ill. 2d at 69. The court further noted:

"A defendant is entitled to competent, not perfect, representation. [Citation.] The inadequacy of a defendant's trial counsel entitles him to a new trial if his appointed counsel was actually incompetent, as reflected in the performance of his duties as trial attorney, and if this incompetence resulted in substantial prejudice to the defendant without which the result of his trial would have been dif-

ferent. [Citation.] Competency is determined from the totality of counsel's conduct at trial. [Citation.]" *Eddmonds*, 101 Ill. 2d at 69. Outside of the allegations submitted in defendant's brief, the record reveals no evidence that the performance of his duties by defendant's trial counsel was questioned in this case. Further, there is no evidence suggesting that defendant was substantially prejudiced by the incompetence of his trial counsel where the outcome of the trial would have been different. Therefore, the totality of defense counsel's conduct at trial suggests that the defendant was not denied effective assistance of counsel. It does not appear that the issue was even raised in the trial court.

In addition, the State correctly recognizes:

"Under *Strickland v. Washington*, (1984) 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, defense counsel is ineffective only if: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's error prejudiced the defendant. A court need not decide the first prong of this test, whether counsel's performance was deficient, before analyzing the prejudice component." *People v. Coleman*, 158 Ill. 2d 319, 349, 633 N.E.2d 654 (1994).

In our view, defendant, in this case, was not prejudiced by the failure of counsel to raise the issue of sentencing in a posttrial motion. He was sentenced within the sentencing range set forth in the Unified Code of Corrections, which is not less than 6 years and not more than 30 years. 730 ILCS 5/5—8—1(a)(3) (West 1996). Aside from defendant's claim that counsel was ineffective due to his failure to file a motion to reduce the sentence, the record is barren of any evidence indicating his counsel's incompetency.

Regardless, Supreme Court Rule 615(a) permits a defendant to preserve the question of whether his sentence was excessive in the event that the plain error rule is applicable. 134 Ill. 2d R. 615(a). Thus, defendant in this case must demonstrate that the excessive sentence amounted to a plain error in order to circumvent the waiver doctrine.

"The plain error rule permits a reviewing court to consider a trial error not properly preserved for review in two circumstances. First, where the evidence in a criminal case is closely balanced, a reviewing court may consider a claimed error not properly preserved so as to preclude argument of the possibility that an innocent man may have been wrongly convicted. [Citation.] A court will examine the record only to see if the evidence is 'closely balanced.' If it is not, there is no need to consider an error which was not properly preserved for review. [Citation.]
***
The plain error rule may also be invoked where the error is so

fundamental and of such magnitude that the accused was denied a fair trial. The rule is invoked where it is necessary to preserve the integrity of the judicial process and provide a fair trial." *Herrett*, 137 Ill. 2d at 209-10.

We find neither of the two circumstances set forth above exists in this case. First, as pointed out above, the evidence in this case was not closely balanced. The testimony of Davon "Butter" Thomas, Leon Grant, and Johari Grant, all eyewitnesses to the shooting, identified defendant as the driver of the vehicle. Further, testimony in the record reveals that defendant instigated the drive-by-shooting which led to the death of Foreman and to Johnson's injury. Second, defendant received a fair trial and his counsel's failure to file a motion to reduce the sentence within 30 days does not rise to the level of a plain error. As a result, we conclude that defendant has waived his right to challenge the trial court's sentence of 30 years' imprisonment.

Waiver aside, defendant must demonstrate that the trial court abused its discretion in imposing a sentence. As stated by our supreme court, "[o]ur decisions have firmly established that the imposition of a sentence is a matter of judicial discretion and that, absent an abuse of this discretion, the sentence of the trial court may not be altered upon review. [Citations.]" *People v. Perruquet*, 68 Ill. 2d 149, 153, 368 N.E.2d 882 (1977); *Center*, 198 Ill. App. 3d at 1032; *Maldonado*, 240 Ill. App. 3d at 485; *People v. Steffens*, 131 Ill. App. 3d 141, 151, 475 N.E.2d 606 (1985); *People v. Cooper*, 283 Ill. App. 3d 86, 95, 669 N.E.2d 637 (1996). Moreover, when the sentence chosen by the trial court falls within the statutory range permissible for the pertinent criminal offense for which the defendant has been convicted, the sentence will not be disturbed absent an abuse of discretion. *People v. Jones*, 168 Ill. 2d 367, 373-74, 659 N.E.2d 1306 (1995).

Defendant contends that the trial court abused its discretion in sentencing him to 30 years' imprisonment for several reasons. First, defendant claims that the trial court improperly considered Smith's involvement in the murder of Robert Foreman, Jr., despite the fact that the jury acquitted him of that charge. Second, he notes his limited role in the crime as he was convicted on an accountability theory and he alleges that he had no knowledge that the passengers in his vehicle were going to shoot. Third, defendant acknowledges his own remorse for the crime and the testimony of Maurice Brumfield which indicated that defendant attempted to refrain Robert Short from discharging his weapon as the shooting occurred. Fourth, defendant claims that the trial court failed to properly consider his young age of 19 years at the time the offense was committed. He also asserts that he was employed at the time of the shooting and that he had completed 1¹/₂ years of

community college. Finally, he identifies his strong rehabilitative potential and the fact that he had no criminal history at the time of the shooting.

As authority for the proposition that the above mitigating factors warrant a reduction of his sentence, defendant relies on several cases where the trial court was found to have abused its discretion by imposing an excessive sentence. *Steffens*, 131 Ill. App. 3d at 153 (murder sentence reduced based on defendant's young age, lack of criminal record, desire to stay in school, and rehabilitative potential); *People v. Gibbs*, 49 Ill. App. 3d 644, 649, 364 N.E.2d 491 (1977) (murder sentence reduced based on defendant's young age and lack of criminal record); *People v. Bigham*, 226 Ill. App. 3d 1041, 1049, 590 N.E.2d 115 (1992) (murder sentence reduced based on defendant's rehabilitative potential, completion of probation, lack of violent criminal record, and demonstrated control over substance abuse); *Brown*, 243 Ill. App. 3d at 176 (murder sentence reduced based on young age of defendant, lack of criminal history, and rehabilitative potential); *Maldonado*, 240 Ill. App. 3d at 484 (murder sentence reduced based on defendant's young age and no prior felony convictions); *People v. Hopkins*, 247 Ill. App. 3d 951, 965, 618 N.E.2d 279 (1992) (murder sentence reduced based on defendant's young age, lack of criminal background, and potential for rehabilitation).

While we have examined the authority cited by defendant above, the supreme court has rejected the use of comparative sentencing from unrelated cases as a basis for claiming that a particular sentence is excessive or that the trial judge abused his discretion. *People v. Fern*, 189 Ill. 2d 48, 62, 723 N.E.2d 207 (1999). "If a sentence is appropriate given the particular facts of that case, it may not be attacked on the ground that a lesser sentence was imposed in a similar, but unrelated, case." *Fern*, 189 Ill. 2d at 62. Thus, we are not persuaded by the comparison of sentences imposed in the unrelated authority defendant relies on above as a basis for reducing the sentence imposed by the trial judge in this case.

Nonetheless, defendant further claims that the trial court improperly imposed the maximum sentence because of Foreman's death. Defendant argues that this is evident from the fact that the trial court allowed to be read into the record the victim impact statements of Foreman's parents, which defendant alleges were irrelevant to the proceedings. Defendant further points out that he was acquitted of the first degree murder charge for the murder of Foreman. As the State correctly notes, however, a trial judge, in aggravation, can consider a defendant's accountability in the murder. *People v. Robinson*, 286 Ill. App. 3d 903, 910, 676 N.E.2d 1368 (1997). Thus, we

conclude that it was not improper for the trial court to consider Foreman's death in aggravation. Further, the trial judge stated that the Foremans' victim statements added very little to the sentencing determination.

Also, the trial court specifically noted that the defendant's conduct caused a severe amount of injury and a great deal of suffering and that, in aggravation, the sentence was necessary to deter others from committing the same offense. The trial judge further told the defendant that defendant "started it all in motion, the evidence was that you knew that those people had guns in the car, you knew what they were when you put them in the car, that's why you went and got them." Thus, the trial court placed certain emphasis on the fact that defendant was the catalyst for the chain of events that led to the shooting.

The record indicates that the trial court also considered several mitigating factors. First, the court heard the mitigation testimony of defendant's cousin and aunt, who testified that defendant was a nonviolent person and that he had a positive, productive, and constructive future. The trial judge also considered the facts that defendant had no prior criminal record, that he was working, that he had a good school record, and that he had adjusted well to life inside prison.

Our supreme court has stated:

"A trial judge is in a far better position than an appellate court to fashion an appropriate sentence, because such judge can make a reasoned judgment based on firsthand consideration of such factors as 'the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age.' [Citations.]" *People v. Streit*, 142 Ill. 2d 13, 19, 566 N.E.2d 1351 (1991).

In addition, this court has held that "the trial court is not required to articulate its consideration of mitigating factors [citation] or to make an express finding that the defendant lacked rehabilitative potential [citation]. Nor is the trial court required to accord greater weight to defendant's potential for rehabilitation than the seriousness of the crime. [Citations.]" *People v. Boclair*, 225 Ill. App. 3d 331, 335-36, 587 N.E.2d 1221 (1992).

In conformity with the above principles, we are not prepared to disturb the trial court's imposition of the maximum sentence on defendant under the facts in this case. The record reveals that the trial court, among other things, considered the defendant's age, lack of criminal history, and rehabilitative potential. These mitigating factors were balanced against the aggravating factors of the seriousness of the offense and the need to deter others from committing such a crime. "A reviewing court may not substitute its judgment for that of a

sentencing court merely because it would have weighed the factors differently." *Streit*, 142 Ill. 2d at 19. We therefore conclude that the trial court did not abuse its discretion in sentencing defendant to 30 years' imprisonment for his conviction of attempted first degree murder.

The decision of the trial court is affirmed.

Affirmed.

GORDON and COUSINS, JJ., concur.