THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AARON JEMAR HOUSTON, Defendant-Appellant.

Third District    No. 3—03—0476

Opinion filed January 31, 2006.

McDADE, J., dissenting.

Sherry R. Silvern, of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Lawrence M. Bauer and Sabrina S. Henry, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE SCHMIDT delivered the opinion of the court:

Defendant, Aaron Houston, was charged with armed robbery in violation of section 18—2(a) of the Criminal Code of 1961. 720 ILCS 5/18—2(a) (West 2002). Defendant was found guilty of this charge after a jury trial. The circuit court of Peoria County sentenced defendant to 20 years. Defendant appeals, claiming it was reversible error not to have a court reporter present during *voir dire*, the evidence admitted at trial was insufficient to prove him guilty beyond a reasonable doubt, trial counsel was ineffective, and the trial court erred in sentencing.

## BACKGROUND

In the early hours of July 11, 2002, while employees were closing the Pizza Hut on Sterling Avenue in Peoria, Illinois, it was robbed. Assistant manager Wesley Fleming testified that the back door to the restaurant had a keypad lock on it which allowed entry. On occasion, some employees would wedge something in the back door to keep it open so they did not have to use the keypad to unlock it. While it was standard practice to keep the door locked during closing, Fleming was unsure whether the door was locked or wedged open at the time of the robbery.

As Fleming was "closing out the restaurant," two men entered the restaurant through the back door. He believed the men had cloths over their faces and wore gray and black baggy clothing and hooded sweatshirts.

Fleming described one of the men as very tall and the other as shorter. One of the restaurant's drivers was also in the restaurant during the robbery. The driver had been ordered to lie on the ground and the taller man stood watch over him as the restaurant was being robbed. The shorter man then, according to Fleming, took the lead in the robbery. The shorter man cocked a handgun that appeared to be either a 9-millimeter or .45-caliber, put it to Fleming's face and ordered him to open the safe. After Fleming explained that he could not open the safe because it was time-locked, the shorter man told him to open the register. Fleming explained that there was no money in the register since it had already been closed out. The shorter man said, "Don't fuck with me, don't fuck with me" and then shot Fleming in the right leg. Fleming then gave the men his wallet and they ran out of the restaurant.

Andrew Albee, the restaurant driver, stated that he was doing dishes in the restaurant around 1 a.m. when he heard the back door open. Two men entered. The shorter of the two men had a gun and told Albee to lie down near the register. Albee heard the men arguing with the manager, heard a gunshot, and then heard the men run out of the restaurant.

Albee testified that he could not see the men's faces, as they were covered, but did see that the shorter man was wearing a black or blue bandanna. It appeared that the taller man had on a gray, hooded sweatshirt and the shorter man wore dark baggy clothing. He could not determine the age of the men. The taller man was about 6 feet tall while the shorter man was around 5 feet 8 inches or 5 feet 9 inches. Albee stated that the back door was closed and locked at the time the men entered. He stated he would have noticed had the back door been propped open on the night of the robbery.

Peoria police officer Terry Esser testified that he was patrolling the area near Pizza Hut at the time of the robbery. He looked toward Pizza Hut and witnessed two black men running from it. He further witnessed a two-door black car driving toward the two men fleeing Pizza Hut. Esser stated that the two men running from Pizza Hut were "trying to get into the car." At the same time, two people that were in the car were getting out of the car. All four men fled the area on foot. The vehicle began rolling with no one in it, so Esser left his squad car and entered the vehicle to stop it. After pulling it into park and pulling the keys, he returned to his squad car and pursued the four fleeing individuals.

Unable to continue the chase by vehicle, Esser parked his squad car and chased the four men into a wooded area through some backyards on foot. The four men split up. When Esser could only see one man, he focused his chase on that man. He believed that man was wearing a yellow or orange shirt and dark pants. Eventually, he lost sight of that man. Additional police units, including a canine unit, joined the chase. Esser testified that he, Officer Matt Legaspi, and the canine unit searched the woods for the four individuals. One of the officers found a black wig on the roadside. Esser then saw a black man lying on the ground in a drainage ditch just inside the wooded area. The man got up and ran, and Esser gave chase.

The chase took him into an area where other officers were located. At this point, Esser was losing distance on the suspect. The chase continued and took the officers to a fence. Esser held the fence down while the other officers crossed it. By the time the officers crossed the fence, they had lost sight of the suspect. They spanned out to search again. Then, according to Esser, Officer Skaggs noticed that the individual they had been chasing was lying on the ground.

Esser testified that he and Officer Ray then took the unarmed man into custody. Esser identified that man in court as the defendant. Esser admitted that he lost sight of the man he was originally chasing more than once. He further testified that after defendant was initially taken into custody, defendant stated he did not do anything wrong and he was just running from the scene.

Peoria police officer Mike Patterson was also called to the scene. After canvassing the area for suspects, he was told to tow the vehicle originally seen by Officer Esser. This was a 1985 Chevy Monte Carlo. A license check with the Secretary of State revealed that the vehicle was registered to Erin Bush. Defendant, Aaron Houston, is Erin Bush's son.

Craig Hightower, a crime scene technician with the Peoria police department, testified that he processed the scene for evidence. Hightower found bullet casings, bullet fragments, live rounds, a black and white bandanna outside the back door of the restaurant, a hairpiece in the road on the 2700 block of Eugene Street, and a gray hoodie in the parking lot near the rear entrance of Pizza Hut.

Detective Michael Mushinsky testified that he and Detective Fred Ball met with defendant at 8 p.m. on July 11, 2002. Defendant told the detectives that he had received his *Miranda* warnings earlier and that he understood them. Defendant stated he was "clearer" on what happened during the robbery. Defendant stated that he, his brother, and another man went to Pizza Hut to get leftover pizza and that the three men entered through the back door.

Defendant told the detectives that his brother, Tobias, then pulled out a gun and demanded money from the manager. Defendant claimed he had no idea that his brother had a gun. After the gun went off, they took the manager's wallet and ran. Defendant further stated that they jumped into a car but saw a police officer coming and jumped out and began running. Defendant also stated he had on fake hair, which he took off while he was running. When asked by Detective Mushinsky why he wore fake hair to obtain leftover pizza, defendant said "I don't know."

Defendant testified on his own behalf. He stated that he was 18 years old and worked at the Pizza Hut that was robbed. On July 10, 2002, he went to Pizza Hut at noon or 1 p.m. to get his paycheck. At that time, he wore a gray-hooded sweatshirt, jeans and white shoes. He was in the area again sometime before 3 a.m. on July 11, 2002. Defendant stated that he had left his cousin's house where he had been smoking marijuana and drinking alcohol. At that time, he was driving a white vehicle and on his way to Jeannette Mays' house.

Defendant stated that since he had been drinking, possessed two bags of marijuana, and had no insurance, he felt he was certain to be pulled over after noticing a police car "creeping out on him." Instead of continuing to drive to Jeannette Mays' house, he parked this white car on Eugene Street, exited it and began running from the police. He then heard an officer tell him to get down but that officer did not arrest him. Defendant testified that a canine unit arrived and when it did, he got up and again ran from the police into a wooded area. The next thing he knew, there were police officers around him with guns drawn asking him where the gun was.

Defendant remembered being interviewed by police detectives. He denied telling police that he went back to Pizza Hut to get leftover pizza because they do not give out leftover pizza. Defendant testified that when being questioned by the police, he was threatened with charges.

Defendant stated he was then told that he was being arrested for armed robbery. He was taken for a show-up identification where he was handcuffed, wore a hoodie over his face like a mask, and stood in the spotlight.

Following closing arguments, a jury found defendant guilty of armed robbery.

On appeal, defendant makes four claims of error. Defendant claims that: (1) the trial court improperly conducted *voir dire* without a stenographer and, therefore, he is entitled to a new trial; (2) he was not proven guilty beyond a reasonable doubt given the evidence offered at trial; (3) he was denied effective assistance of counsel; and (4) his 20-year sentence was excessive and improper.

## ANALYSIS

### A. *Voir Dire*

Defendant initially claims that the trial court improperly allowed *voir dire* to proceed with no court stenographer present. This issue involves a question of law, and, therefore, we review it *de novo. In re D.G.*, 144 Ill. 2d 404, 581 N.E.2d 648 (1991).

■ Illinois Supreme Court Rule 608(a)(9) states as follows:

> "[I]n cases in which a sentence of death is imposed, a transcript of all proceedings regarding the selection of the jury, and in other cases the court reporter shall take full stenographic notes of the proceedings regarding the selection of the jury, but the notes need not be transcribed unless a party designates that such proceedings be included in the record on appeal[.]" 177 Ill. 2d R. 608(a)(9).

At trial, the trial court asked both the State and defense counsel whether they wanted *voir dire* recorded. The court asked, "Counsel, what do you want to do relative to having a court reporter take the actual *voir dire;* do you wish to have it recorded or not?" Defense counsel then stated, "I don't need it recorded."

The trial judge told the court reporter she would be free to go after the names of the 12 potential jurors were read. Defense counsel then stated, "Judge, subject to coming up." The trial judge then made it clear that defense counsel was correct, that the court reporter was dismissed subject to being called back at any time and that "she'll be available."

Recently, the Fourth District Appellate Court stated, "To our knowledge, no court has ever interpreted Rule 608(a) to require trial courts to second-guess defense counsel when they expressly waive any of the requirements of that rule. It was the responsibility of [the defendant], not the trial court, to preserve an adequate record for this appeal." *People v. Ash*, 346 Ill. App. 3d 809, 813, 805 N.E.2d 649, 652 (2004). A trial court's failure to provide a court reporter during *voir dire* does not deprive the defendant of due process. *People v. Culbreath*, 343 Ill. App. 3d 998, 798 N.E.2d 1268 (2003), citing *People v. Morris*, 229 Ill. App. 3d 144, 593 N.E.2d 932 (1992).

We hold that the trial court's failure to furnish a court reporter during *voir dire* is not reversible error. As the *Morris* court pointed out, the defendant could obtain a bystander's report or an agreed statement of facts, as permitted under Supreme Court Rules 612 and 323, if he truly believed errors occurred during *voir dire* or the jury was improperly empaneled. 177 Ill. 2d R. 612; 166 Ill. 2d R. 323. Defendant has made no attempt to obtain either a bystander's report or an agreed statement of facts. Defendant, after waiving his right to a court reporter, merely wrote a letter to the trial judge (who was

present during *voir dire*) alleging "racial irregularities" with the jury makeup and that one juror knew him who claimed not to know him. The trial judge found these allegations meritless. The trial court offered to have *voir dire* recorded by the court reporter. Defendant, through his counsel, waived his right to have a reporter.

### B. Insufficiency of Evidence

■ Defendant's second claim of error is that the evidence introduced at trial was insufficient to prove him guilty beyond a reasonable doubt. In reviewing defendant's claim regarding the sufficiency of evidence, we do not reweigh the evidence but rather view it in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Young*, 128 Ill. 2d 1, 538 N.E.2d 461 (1989). We hold that the evidence was sufficient to convict the defendant.

The Pizza Hut employees who were victimized during the robbery testified that the door the robbers came in was most likely locked and could only be unlocked by entering a code on the keypad. Defendant was an employee of the restaurant.

Esser testified he witnessed two men fleeing the Pizza Hut which was robbed. The men then approached a vehicle. He then saw the original two and additional men flee the vehicle. This vehicle was registered to defendant's mother. Esser chased all four men into a wooded area. A search of the wooded area found the defendant lying in a drainage ditch. Defendant ran as soon as he saw officers approach the ditch. Thereafter, defendant was again found lying on the ground and was arrested.

Officer Mushinski testified that he interviewed the defendant after his arrest. Defendant told Officer Mushinski that he went to Pizza Hut with his brother for leftover pizza. Defendant informed Mushinski that, while at Pizza Hut, his brother pulled a gun that went off. Defendant admitted to Mushinski that he had seen his brother acquire a pistol earlier in the day, but did not know the brother brought it to Pizza Hut. Defendant told the officer that once the gun discharged, they took the manager's wallet and fled the scene. Defendant also noted that he wore a black wig that night. A black wig was recovered from the area where the police searched for the perpetrators of this crime.

We must not retry the defendant, and it is our sole task on review to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 818 N.E.2d 304 (2004), citing *Jackson v. Virginia*, 443 U.S.

307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979). We must allow all reasonable inferences from the record in favor of the prosecution. *Cunningham*, 212 Ill. 2d at 280.

Certainly reasonable inferences drawn from the aforementioned evidence support the guilty verdict in this matter. Defendant admitted to the police that he took part in the robbery. Defendant told the police that he wore a wig the night of the robbery to go get pizza from his employer. As an employee, defendant had access to the entry code to allow him into the business robbed. There is no evidence supporting defendant's claim that he was alone, driving a white vehicle, when he spotted the police and began running and hiding. The black vehicle owned by defendant's mother from which the police claim defendant fled was, however, recovered nearby the scene. When viewing this evidence in the light most favorable to the prosecution, we find that a rational trier of fact could find all the elements of the crime of armed robbery were proved beyond a reasonable doubt.

## C. Ineffective Assistance of Counsel

■ Defendant's third contention on appeal is that he was denied effective assistance of counsel as: (1) his counsel waived his right to have a court reporter present during *voir dire*; (2) his counsel failed to tender a jury instruction on identification; and (3) his counsel failed to file a motion to reconsider his sentence.

To establish ineffective assistance of counsel, a defendant must establish that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that absent counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). When counsel's performance is reviewed, there is a strong presumption that counsel's conduct fell within the range of reasonable professional performance. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065. Trial strategy cannot be a basis for finding counsel ineffective. *People v. Smith*, 177 Ill. 2d 53, 685 N.E.2d 880 (1997). The only exception to this rule is when counsel's trial strategy is so unsound that counsel fails to conduct any meaningful adversarial testing. *People v. Reid*, 179 Ill. 2d 297, 688 N.E.2d 1156 (1997).

If the ineffectiveness claim can be disposed of on the ground that defendant was not prejudiced in any way, a reviewing court need not determine whether counsel's performance fell below an objective standard of reasonableness. *People v. Haynes*, 192 Ill. 2d 437, 737 N.E.2d 169 (2000).

Excusing the court reporter from taking notes of *voir dire* is not,

in and of itself, ineffective assistance of counsel. *People v. Ash*, 346 Ill. App. 3d 809, 813, 805 N.E.2d 649, 652 (2004), citing *People v. Thompkins*, 121 Ill. 2d 401, 448, 521 N.E.2d 38, 59 (1988). In *People v. Culbreath*, the court recognized that lack of a transcript of *voir dire* might render counsel's job more difficult when reviewing or proving alleged errors in jury selection; however, it does not preclude the raising or review of any errors. *People v. Culbreath*, 343 Ill. App. 3d 998, 798 N.E.2d 1268 (2003).

We hold that the waiver of the court reporter during *voir dire* does not equate to a colorable ineffective assistance of counsel claim in this case. As noted above, the second part of the *Strickland* test requires the defendant to prove that he was prejudiced in some way. Here, as we have previously stated, the defendant could have put forth a bystander's report or an agreed statement of facts regarding jury selection to attempt to prove his claims that a juror knew him or that "racial irregularities" existed in the jury's "makeup." While, as the *Culbreath* court noted, this may make review of the issues somewhat more difficult, it certainly does not preclude meaningful review of any alleged errors.

Defendant's second claim of ineffective assistance of counsel centers around the failure of trial counsel to tender Illinois Pattern Jury Instructions, Criminal, No. 3.15 (4th ed. 2000) (hereinafter IPI Criminal 4th). This instruction states as follows:

"When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following:

■ The opportunity the witness had to view the offender at the time of the offense.

[or]

■ The witness's degree of attention at the time of the offense.

[or]

■ The witness's earlier description of the offender.

[or]

■ The level of certainty shown by the witness when confronting the defendant.

[or]

■ The length of time between the offense and the identification confrontation." IPI Criminal 4th No 3.15.

Trial strategy cannot be a basis for finding counsel ineffective. *People v. Smith*, 177 Ill. 2d 53, 685 N.E.2d 880 (1997). Decisions concerning defense counsel's choice of jury instructions are characterized as tactical decisions, within the judgment of defense counsel. *People v. Shlimon*, 232 Ill. App. 3d 449, 597 N.E.2d 728 (1992). When the evidence against a defendant is overwhelming, the lack of a

particular jury instruction is harmless in light of the other instructions, arguments of counsel, and a generally fair trial. *People v. Barker*, 298 Ill. App. 3d 751, 699 N.E.2d 1039 (1998).

During trial, defense counsel adequately attacked the State's evidence regarding the identification of defendant as a perpetrator of this crime. Counsel correctly told the jury that neither of the Pizza Hut employees was "able to identify" either of the assailants. Specifically, counsel stated, "There was not one iota of evidence that said they were able to identify Aaron Houston in that place." Defense counsel told the jury that Mike Patterson and Craig Hightower "couldn't identify anybody." Finally, during cross-examination, the first question asked to Esser was "was he out, this young man, of your sight how many times?" Esser answered by stating, "I would say two."

Trial counsel more than adequately attacked the State's identification of defendant as one of the assailants and maintained throughout the trial that identification was contested. Given the overwhelming evidence of defendant's guilt as discussed above, we find that failure to tender a jury instruction on identification did not prejudice the defendant in any way. In our opinion, tendering such an instruction would not have changed the outcome of this trial, and as such, defendant cannot satisfy the second prong of the *Strickland* test.

Defendant's final claim of ineffective assistance of counsel is intertwined with the last issue presented on appeal. Defendant argues that the trial court abused its discretion in sentencing him to 20 years' imprisonment by failing to properly weigh relevant mitigating factors. Defendant's trial counsel, however, failed to file a postsentencing motion on these grounds, and as such, defendant requests that we either review the issue under a plain error analysis or find counsel ineffective for failing to file a postsentencing motion.

We hold that defendant has waived this issue by failing to raise it in a postsentencing motion, that a plain error analysis is not warranted, and that defendant cannot meet the burden set forth in the *Strickland* test and, as such, cannot successfully argue ineffective assistance of counsel for failure to file the motion.

Failure to raise an issue in a posttrial motion results in waiver of the issue on appeal. *People v. Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124 (1988). A defendant must file a written postsentencing motion in the trial court to preserve sentencing issues for appellate review. *People v. Reed*, 177 Ill. 2d 389, 686 N.E.2d 584 (1997). This court has previously stated that we will only review errors not properly preserved under the plain error doctrine when the evidence is closely balanced or the alleged error was of such gravity that the defendant was denied a fair trial. *People v. Mendez*, 318 Ill. App. 3d 1145, 745 N.E.2d 93 (2001).

The evidence in this matter, as we note in section B above, is not so closely balanced that a plain error review is warranted. Moreover, the alleged sentencing error was not of such gravity to deprive the defendant of a fair trial. Defendant claims his 20-year sentence was the result of the trial court improperly weighing the aggravating and mitigating factors. In support of this contention, defendant points to his youth at the time of his arrest, the support of his fiancée suggesting he "was on his way to rehabilitating his life," the fact that he was using marijuana and alcohol daily, and the fact that he was employed at the time of his arrest.

Initially, we note that while it is true defendant was employed at the time of his arrest, it was his employer that he was convicted of robbing. Therefore, we have no doubt that the trial court assigned the proper weight to this "mitigating" factor. Regarding defendant's youth, fiancée's opinions, and drug use, we find nothing in the record to suggest the trial court improperly ignored these factors. The trial court was required to consider defendant's rehabilitative potential and ensure that the punishment was proportionate to the nature of the crime. Ill. Const. 1970, art. I, § 11. However, a trial court is not required to enumerate each factor considered in arriving at a sentence (*People v. Mayoral*, 299 Ill. App. 3d 899, 702 N.E.2d 238 (1998)) nor is the trial court required to give greater weight to defendant's rehabilitative potential than to the seriousness of the offense or other aggravating factors. *People v. Lima*, 328 Ill. App. 3d 84, 765 N.E.2d 64 (2002).

Armed robbery is a Class X felony carrying a potential sentence from 6 to 30 years' incarceration. 730 ILCS 5/5—8—1(a)(3) (West 2002); 720 ILCS 5/18—2(b) (West 2002). Defendant has a history of juvenile adjudications for violent conduct. In fact, he was on parole at the time of this incident. Not only was this incident an armed robbery, but a victim was shot and suffered great bodily injury. Again, for this court to review the alleged sentencing error of the trial court under the plain error doctrine, the error would have to be of such gravity that the defendant was denied a fair hearing. We find this is not such a case and, therefore, decline to review defendant's claim that the trial court abused its discretion when sentencing him under a plain error analysis. We find no error, let alone plain error.

Defendant argues that if we find the issue waived, we must then also find defendant's trial counsel ineffective for failure to raise it in a postsentencing motion, vacate his 20-year sentence, and remand for a new sentencing hearing. We disagree.

Failure to file "a motion to modify or reduce a sentence pursuant to section 5—8—1(c) of the Code *** does not necessarily rise to inef-

fective assistance of counsel." *People v. Joy*, 150 Ill. App. 3d 310, 314, 510 N.E.2d 1325, 1328 (1986). Again, to satisfy the second prong of the *Strickland* test, defendant must show that he was actually prejudiced by counsel's deficient performance and that there remains a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Butler*, 186 Ill. App. 3d 510, 541 N.E.2d 171 (1989).

The defendant in *People v. Smith*, 321 Ill. App. 3d 523, 747 N.E.2d 1081 (2001), presented the same argument as defendant. In *Smith*, the defendant was sentenced to 30 years' imprisonment after being convicted of first degree attempted murder. *Smith*, 321 Ill. App. 3d at 533. The *Smith* court noted:

> "In our view, defendant, in this case, was not prejudiced by the failure of counsel to raise the issue of sentencing in a posttrial motion. He was sentenced within the sentencing range set forth in the Unified Code of Corrections, which is not less than 6 years and not more than 30 years. 730 ILCS 5/5—8—1(a)(3) (West 1996). Aside from defendant's claim that counsel was ineffective due to his failure to file a motion to reduce the sentence, the record is barren of any evidence indicating his counsel's incompetency." *Smith*, 321 Ill. App. 3d at 534.

Similarly, we note in this case that with the exception of defendant's allegations regarding trial counsel's effectiveness, the record is devoid of any evidence indicating trial counsel was incompetent. Just as in *Smith*, this defendant was sentenced to a term of imprisonment within the parameters set forth in the Code. Defendant Houston's sentence is totally appropriate and proportional to the offense committed. As such, we find defendant was not prejudiced by counsel's failure to file a postsentencing motion attacking the length of his sentence. A defendant is entitled to competent, not perfect, representation. *People v. Eddmonds*, 101 Ill. 2d 44, 461 N.E.2d 347 (1984). Competency is determined from the totality of counsel's conduct at trial. *Eddmonds*, 101 Ill. 2d at 69.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

SLATER, J., concurs.

JUSTICE McDADE, dissenting:
The majority has found that defendant, by counsel, waived his

right to have a court reporter present to transcribe *voir dire* and that he cannot challenge this procedural defect on appeal. I do not believe that, under the applicable supreme court rule, the trial court has the discretion to even suggest waiver of the taking of stenographic notes of *voir dire* or that defense counsel (or the prosecutor) can agree to waive. Nor can I imagine any trial strategy that would warrant waiver. For this reason, I cannot agree with the majority's contrary decision on this issue and therefore dissent from it. I would not reach the other issues resolved by the majority but would remand the matter for a new trial.

The majority cites (363 Ill. App. 3d at 572) with approval the following statement from *People v. Ash*, 346 Ill. App. 3d 809, 813, 805 N.E.2d 649, 652 (2004):

"To our knowledge, no court has ever interpreted Rule 608(a) to require trial courts to second-guess defense counsel when they expressly waive any of the requirements of that rule. It was the responsibility of [the defendant], not the trial court, to preserve an adequate record for this appeal."

In my opinion, the *Ash* decision and those on which it relies are wrong.

In his argument on this issue, the defendant properly relies on Illinois Supreme Court Rule 608(a)(9), which provides:

"Rule 608. The Record on Appeal

"(a) Designation and Contents. The clerk of the circuit court shall prepare the record on appeal upon the filing of a notice of appeal \*\*\*. \*\*\* The record on appeal *must* contain the following:

\* \* \*

(9) in cases in which a sentence of death is imposed, a transcript of all proceedings regarding the selection of the jury, and in other cases the court reporter *shall* take full stenographic notes of the proceedings regarding the selection of the jury, but the notes need not be transcribed unless a party designates that such proceedings be included in the record on appeal[.]" (Emphasis added.) 177 Ill. 2d R. 608(a)(9).

This is a rule of criminal procedure and, as is the case with all the supreme court's rules that fall into that category, it is mandatory; it is *a rule* of procedure, not a mere suggestion. *People v. Wilk*, 124 Ill. 2d 93, 103, 529 N.E.2d 218, 221 (1988). Such rules are binding on the parties and on the court. *Medow v. Flavin*, 336 Ill. App. 3d 20, 782 N.E.2d 733 (2002). I am unaware of any authority that allows any court, trial or appellate, to pick and choose which supreme court rules it wants to follow and which it can elect to ignore. If the rule grants discretion, then discretion can be exercised. Where, as here, the language of the rule is mandatory, I believe all the courts of Illinois are constrained to follow it. They are also required to ensure that the parties follow it.

The majority suggests that Rule 323 (166 Ill. 2d R. 323) (made applicable to criminal cases by Supreme Court Rule 612 (177 Ill. 2d R. 612)) would have been an adequate substitute for defendant. That rule, however, relates only to the report of proceedings. In the criminal procedure article, that report is required and described separately from the transcript of *voir dire*—in Rule 608(a)(8) rather than Rule 608(a)(9). Moreover, Rule 608(a)(9) specifically requires the preparation of a transcript whereas Rule 608(a)(8) does not.

A careful review of Rule 323 shows that paragraph (c) allows the preparation of a "bystander's report" in lieu of a *transcript of the evidence of proceedings*. 166 Ill. 2d R. 323(c). Neither Rule 323(c) nor Rule 323(d), permitting an agreed statement of facts, relates to the transcript of *voir dire*. Indeed, while it is feasible to reconstruct the essential evidence presented at trial, it would be extremely difficult (perhaps impossible) to accurately and adequately reconstruct *voir dire*. Rule 608(a)(9) implicitly recognizes that neither a bystander's report nor an agreed statement of facts can adequately document the *voir dire* in a case and requires the taking of verbatim notes by a court reporter. Rule 608(a)(9) is not only straightforward, unambiguous and mandatory, it is also sensible and pragmatic.

The record in the present case shows that the trial court actually *invited* the parties to waive the presence of the court reporter during *voir dire*, and, as previously indicated, I see nothing in Illinois Supreme Court Rule 608(a)(9) that authorizes, or even allows, such a waiver. With regard to cases such as this one where the death penalty was not imposed, the rule mandates the taking of "full stenographic notes of the proceedings regarding the selection of the jury," leaving optional *only* the transcription of those notes in the event a party designates their inclusion in the record on appeal. 177 Ill. 2d R. 608(a)(9). In a death penalty case, the rule mandates both taking the notes and preparation of a transcript of the proceedings regarding jury selection.

Like many Americans, on and off the bench, I am acutely conscious of the number of prison inmates being released, in this state and others, from general population and death row having been pronounced innocent on the basis of DNA or other, newly advanced variations of other forensic tests. All had been convicted in trial courts and most of the convictions have been affirmed by courts of review, sometimes including the highest court of the state. If we were looking at only a handful, it would be troubling; in the current numbers it is (or should be) alarming. I believe that our best (perhaps only) hope of minimizing the incidence of wrongful convictions lies in strict compliance by the police, prosecutors, defense counsel, and judges with procedural rules designed to ensure proper arrests and seizures of evidence,

proper interrogations, fair trials, and fair hearings with a proper record in appeals. I believe the supreme court rules are designed to create or contribute to the realization of such procedural equity and that they should be scrupulously followed.

And, frankly, in a situation such as this, I cannot even see what the problem is. The rule mandates stenographic notes. Court reporters are not being required to perform some onerous *extra* duty—they are hired and paid for the specific purpose of keeping a verbatim record of courtroom proceedings. Why would we not require that the rule be followed? In the present case there was actually a practical downside to not having complied in that the court was called upon to evaluate a *pro se* challenge of racial irregularities and an improper seating of one juror without the benefit of a transcript of *voir dire* on which to rely.

In sum, I believe Rule 608(a)(9) is mandatory, not discretionary, and that *People v. Ash*, 346 Ill. App. 3d 809, 805 N.E.2d 649 (2004), *People v. Culbreath*, 343 Ill. App. 3d 998, 798 N.E.2d 1268 (2003), and *People v. Morris*, 229 Ill. App. 3d 144, 593 N.E.2d 932 (1992), relied on by the majority, were wrongly decided.

Because the bedrock of our judicial system is a fair trial and because, unlike the majority, I do not believe it is possible to determine whether any of defendant's challenges to jury selection had merit and, therefore, whether the selection process was or was not essentially fair in the absence of a verbatim record, I would reverse the conviction and remand for a new trial. Accordingly, I dissent from that portion of the decision that validates the waiver of the court reporter during *voir dire*.