FIFTH DIVISION
July 27, 2007

No. 1-05-3782

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| KIRK PRICE, | ) | Honorable |
| | ) | Thomas M. Davy, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GALLAGHER delivered the opinion of the court:

Following a bench trial, defendant Kirk Price was convicted of aggravated unlawful use of a weapon, sentenced to 30 months' probation and assessed $729 in fines, fees and costs. On appeal, defendant contends that because he was arrested during an overnight stay at his sister's home, he falls within a statutory exception enumerated in the offense. Defendant also asserts that his 30-month probation sentence was excessive and that the trial court improperly assessed three fees and one fine against him. Finally, defendant challenges the court's failure to provide him with a $5-per-day credit for the two days he spent in custody before posting bail. For the reasons set forth below, we affirm defendant's conviction and sentence. However, we vacate $105 in fines and fees assessed by the trial court, and we further order that he receive a $10 credit for his time spent in custody against any remaining fines.

BACKGROUND

The relevant facts are not in dispute. At approximately 9 a.m. on November 23, 2003, a group of Chicago police officers executed an arrest warrant for defendant's nephew, Pierre Price, at 11135 South Ashland Street during a routine warrant sweep of the neighborhood. Defendant was an overnight guest at the house which was rented by defendant's sister and her husband. Defendant testified that his sister suffered from diabetes and he spent the night to assist with her care, as he regularly did when she was ill. The residence was also the permanent residence of Pierre, whom the police were seeking when they entered the house with the arrest warrant. When the officers entered the residence looking for Pierre, defendant was asleep in the living room adjacent to the entryway.

Shortly after entering the residence, an officer saw defendant retrieve a gun from the cushion of an armchair and attempt to conceal it. A fully loaded and uncased .57 Ruger revolver was recovered from underneath the chair. The weapon's serial number had been filed off, and defendant and his relatives disclaimed any knowledge of its origin or ownership. Defendant was convicted of aggravated unlawful use of a weapon.

At sentencing, in seeking mitigation of defendant's sentence, his counsel highlighted defendant's lack of criminal history and his excellent educational and employment prospects. Defendant's counsel accordingly requested probation to "give some structure" to defendant's life and help him become a "productive law abiding member of society." The court sentenced defendant to 30 months' probation and ordered him to pay $729 in fines, fees and costs.

ANALYSIS

I.  Whether Defendant Was in His "Abode"

Defendant challenges his conviction on the basis that his status as an overnight guest at 11135 South Ashland puts him outside the scope of the aggravated-unlawful-use-of-a-weapon statute.  Specifically, defendant contends that the statute permits a person who is in his or her "overnight living quarters" to lawfully possess a weapon.

The statute provides, in relevant part:

"(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on *his or her land* or *in his or her abode* or fixed place of business any pistol, revolver, stun gun or taser or other firearm; and

* * *

(3) One of the following factors is present:

(A) The firearm was uncased, loaded and immediately accessible at the time of the offense." (Emphasis added.)  720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2002).

Relying on a definition of "abode" enumerated in *People v. Taylor*, 28 Ill. App. 3d 186, 187, 328 N.E.2d 325, 326 (1975), defendant asserts that the legislature intended "abode," as used

3

in the statute, to mean "overnight living quarters." Accordingly, defendant contends that the State failed to prove beyond a reasonable doubt that he was not in his abode when he possessed a weapon while spending the night as a guest at his sister's home.

As the statute indicates, a person's presence in his abode is an exception to the offense of unlawful use of a weapon. Because the exception is a substantive element of the offense, however, the State must prove, beyond a reasonable doubt, that the defendant was not in his abode. *People v. Laubscher*, 183 Ill. 2d 330, 335, 701 N.E.2d 489, 492 (1998); *People v. Chmilenko*, 44 Ill. App. 3d 1060, 1063, 358 N.E.2d 1247, 1250 (1976). The State may rely on circumstantial evidence to prove the abode element as long as it is not left entirely to conjecture or assumption. *People v. Pulley*, 345 Ill. App. 3d 916, 921, 803 N.E.2d 953, 957 (2004), citing *Laubscher*, 183 Ill. 2d at 335-36, 701 N.E.2d at 491.

Though defendant frames his appeal as a challenge to the sufficiency of the evidence on the abode element, he also asserts that because the only issue on appeal is whether, as a matter of law, his sister's home qualifies as his abode, a *de novo* standard of review applies. The State counters that because defendant has styled his appeal as a challenge to the sufficiency of the evidence presented at trial, a more deferential standard of review applies. Because both parties raise only questions of law on appeal and because defendant, in his reply brief, expressly disavows challenging the sufficiency of the evidence, we apply a *de novo* standard of review and focus our inquiry on the definition of "abode" in the statute. See *People v. Davis*, 199 Ill. 2d 130, 135, 766 N.E.2d 641, 644 (2002) (holding that when a defendant challenges only the provisions of a statute as interpreted by the trial court and not the facts of the case, a question of law is presented and a *de novo* standard of review applies).

1-05-3782

When interpreting a statute, it is well settled that a court should give words their plain and ordinary meaning. *People v. Dednam*, 55 Ill. 2d 565, 568, 304 N.E.2d 627, 629 (1973). When ascribing meaning to words, however, courts also must give effect to the law's purpose and the intent of the legislature. *People v. Jeffries*, 164 Ill. 2d 104, 110, 646 N.E.2d 587, 589 (1995); *People v. Scott*, 57 Ill. 2d 353, 358, 312 N.E.2d 596, 599 (1974). A court must not construe a term used in a statute in a manner that would lead to an absurd result. *People v. Chandler*, 129 Ill. 2d 233, 253, 543 N.E.2d 1290, 1298 (1989). Furthermore, courts may properly consider legislative history when attempting to divine legislative intent. *Kirwan v. Welch*, 133 Ill. 2d 163, 168-70, 549 N.E.2d 348, 350-51 (1989).

We begin our inquiry with the ordinary meaning of "abode." Webster's Third New International Dictionary defines "abode" as "continued stay in a place: residence, sojourn; place where one abides or dwells: home." Webster's Third New International Dictionary 4 (1993). Similarly, Black's Law Dictionary defines "abode" as "a home; a fixed place of residence." Black's Law Dictionary 5 (8th ed. 2004). Black's further defines "residence" as the "the act or fact of living in a given place for some time," and "the place where one actually lives, as distinguished from a domicile, [requiring] bodily presence plus an intention to make the place one's home. A person thus may have more than one residence at a time but only one domicile." Black's Law Dictionary 1335 (8th ed. 2004). See also *Dunbar v. State*, 162 Ind. App. 375, 378, 319 N.E.2d 630, 632 (1974) ("the word 'abode,' in its usual and customary meaning, connotes the place where one resides").

In short, this authority suggests that the ordinary meaning of "abode" is a place with which one has significant and persisting contacts, *i.e.*, a place that a person considers his home

5

and where he intends to live on a more than transient basis. See also *United Bank of Loves Park v. Dohm*, 115 Ill. App. 3d 286, 291, 450 N.E.2d 974, 978 (1983) (holding that a person's "usual place of abode" as used in section 2-203 of the Code of Civil Procedure is a residence with which an individual maintains intimate, unbroken and substantial ties).

Accordingly, while the ordinary meaning of "abode" – standing alone without a modifier such as "permanent" or "temporary" preceding it – always encompasses one's domicile or places of legal or permanent residence, the term also includes those places with which a person has established significant contacts through continuous or extended habitation. Under this definition, a person who merely spends the occasional night someplace, even if he does so regularly, cannot be said to have established such substantial and uninterrupted ties with that location as to make it his abode.

Defendant asserts, however, that this court in *Taylor* defined "abode" as "overnight living quarters" and that this definition is binding on us now. *Taylor*, 28 Ill. App. 3d at 187, 328 N.E.2d at 326. In *Taylor,* a defendant convicted of the related offense of unlawful use of a weapon argued that the State failed to prove beyond a reasonable doubt that he was not in his abode when apprehended with a gun in his possession at his girlfriend's apartment. *Taylor*, 28 Ill. App. 3d at 186-87, 328 N.E.2d at 325-26. The arresting officer in *Taylor* was summoned to the address by the defendant's girlfriend and, upon arrival at the scene, discovered the defendant asleep on the couch with a gun in his pocket. *Taylor*, 28 Ill. App. 3d at 187, 328 N.E.2d at 326.

The defendant challenged his conviction claiming a factual dispute existed as to whether the apartment was his abode. *Taylor*, 28 Ill. App. 3d at 186-87, 328 N.E.2d at 325-26. Specifically, the defendant testified that he lived at the apartment "off and on" and that a

different address was his permanent residence but, inconsistent with that statement, the defendant later testified that the apartment was where he kept all his worldly possessions. *Taylor*, 28 Ill. App. 3d at 187-88, 328 N.E.2d at 326-27. The defendant contended this conflicting testimony gave rise to reasonable doubt as to whether his girlfriend's apartment was in fact his abode.

Before ruling that the State failed to prove that the defendant was not in his abode at the time of his arrest, the *Taylor* court concluded that the legislature intended "abode" to mean overnight living quarters. *Taylor*, 28 Ill. App. 3d at 187, 328 N.E.2d at 326. The court reasoned that because the legislature declined to use the word "dwelling" – which the legislature defined elsewhere in the Criminal Code – it could not have intended "abode" to be synonymous with "dwelling." *Taylor*, 28 Ill. App. 3d at 187, 328 N.E.2d at 326. Accordingly, the *Taylor* court inferred that "abode," as used in the statute, meant any place that an individual spends the night. *Taylor*, 28 Ill. App. 3d at 187, 328 N.E.2d at 326. Because, at a minimum, a factual dispute existed about whether the defendant lived in the apartment, the *Taylor* court reversed the defendant's conviction. *Taylor*, 28 Ill. App. 3d at 188, 328 N.E.2d at 327.

The State counters that the outcome of this case is controlled by *People v. McClure*, 43 Ill. App. 3d 1059, 358 N.E.2d 23 (1976). In *McClure*, this court upheld the conviction of a defendant who, like the defendant in *Taylor*, was arrested for unlawful use of a weapon in his girlfriend's apartment. *McClure*, 43 Ill. App. 3d at 1062-63, 358 N.E.2d at 26. In *McClure*, the arresting officers entered the defendant's apartment complex at 1:45 p.m., seeking him for unspecified reasons. *McClure*, 43 Ill. App. 3d at 1062, 358 N.E.2d at 26. The defendant, who lived in apartment 126, was discovered in his briefs with a shotgun in his possession in

apartment 103, his girlfriend's residence. *McClure*, 43 Ill. App. 3d at 1062-63, 358 N.E.2d at 26. On appeal, the defendant argued, like the defendant in *Taylor*, that his girlfriend's apartment was his abode. *McClure*, 43 Ill. App. 3d at 1062, 358 N.E.2d at 26.

Rejecting the defendant's argument, the *McClure* court held that, unlike in *Taylor*, no evidence suggested the defendant kept any of his possessions at his girlfriend's apartment. *McClure*, 43 Ill. App. 3d at 1062-63, 358 N.E.2d at 26. The *McClure* court did not, however, address whether the fact that the defendant was discovered in the apartment standing next to the bed in his briefs gave rise to an inference that he was in his overnight living quarters at the time of his arrest. Thus, the *McClure* court distinguished *Taylor* without addressing how defining "abode" as "overnight living quarters" might affect the outcome of the case. Although the inference from *McClure* is that a defendant must keep a substantial portion of his belongings in a place before he may call it his abode, because that court did not squarely address the issue, we do so here.

Defendant asserts that because relevant language in the unlawful-use-of -a-weapon offense at issue in *Taylor* and *McClure* is identical to the language in the aggravated-unlawful-use-of-a-weapon offense involved here, "abode" must have the same meaning in both offenses. We agree. It appears that the legislature copied the language from the unlawful-use-of-a-weapon offense verbatim when it enacted the offense at issue here. Compare 720 ILCS 5/24-1.6 (West 2002) with 720 ILCS 5/24-1 (West 2002); see also *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555, 591 N.E.2d 427, 430 (1992) (holding that sections of the same statute should be considered *in pari materia* and construed as a harmonious whole).

Despite our agreement with defendant that "abode" has the same meaning in both

8

weapons offenses, because equating "abode" with "overnight living quarters" is inconsistent with the law's purpose and legislative intent, we disagree that "abode" means any overnight living quarters. Instead, we must ascribe "abode" its ordinary meaning, namely, a place of residence with which an individual has established substantial and uninterrupted ties and which he treats as a home.

Both the General Assembly's stated purpose behind the unlawful-use offenses and relevant legislative history support our conclusion. Where both unlawful-use offenses are enumerated, the legislature stated the intended purpose of the act as follows: "The possession and use of weapons inherently dangerous to human life constitutes a sufficient hazard to society to call for prohibition unless there appears appropriate justification created by *special circumstances*." (Emphasis added.) 720 ILCS Ann. 5/24, Committee Comments–1961, at 7 (Smith-Hurd 2003). On its face, this language counsels against liberally construing "abode" to include any overnight residence in which an individual happens to find himself at the time of his arrest. See also *People v. Marin*, 342 Ill. App. 3d 716, 723, 795 N.E.2d 953, 959 (2003) (holding that the purpose of the aggravated-unlawful-use-of-a-weapon statute is to protect the general public and police enforcement officers).

Further, legislative history from subsequent amendments to the unlawful-use offenses supports attributing to "abode" its ordinary meaning. In response to a number of municipal ordinances that made it unlawful to keep a firearm in one's home – thereby abrogating the "abode" element – the legislature passed section 24-10 of the Criminal Code, creating an affirmative defense against such ordinances. Specifically, the statute provides:

"It is an affirmative defense to a violation of a municipal ordinance that

9

prohibits, regulates, or restricts the private ownership of firearms if the individual

who is charged with the violation used the firearm in an act of self-defense or

defense of another  *** when *on his or her land or in his or her abode or fixed*

*place of business.*"  (Emphasis added.)  720 ILCS 5/24-10 (West 2004).

When considering the meaning of "abode" in the context of this statute, the Illinois

General Assembly expressly noted that the word's definition was taken directly from the

unlawful-use offenses and the Criminal Code.  Specifically, in the House of Representatives,

Representative Bradley stated that "[t]he definition, as we discussed, chairman, both in

committee, subcommittee and also outside of those, is the language which was taken directly

from the Criminal Code. ***  [I]t would include basically the home and the area around the

home on the private property, but would not include private right of ways."  93d Ill. Gen.

Assem., House Proceedings, May 13, 2004, at 19 (statements of Representative Bradley); see

also 93d Ill. Gen. Assem., Senate Proceedings, May 25, 2004, at 6 (statements of Senator Petka)

(noting that the language in section 24-10 "simply incorporates the language of – of the unlawful

use of weapons Section as a restriction").[1]

---

[1] The definition of abode was of considerable interest in the House of Representatives.

During the same floor debate, the following exchange occurred:

"Representative Rose: You had answered the question earlier about the

definition of 'abode.'  I'm not sure that the record's [going to] be clear in a

transcript form. Would you just go over that once again, your definition of

'abode'?

10

Furthermore, in the Senate floor debate, Senator Petka, the principal sponsor of the bill, was equally unambiguous about what the legislature intended "abode" to mean in the context of the unlawful-use offenses.  During the floor debate on what effect the affirmative defense bill would have on the current law, Senator Petka stated that the unlawful-use offenses "permit[] an individual to have a firearm in their home – or their place of business.  So, if you're [talking about] carrying [a weapon] outside the home, the answer is that individual would probably be in violation of a State law."  93d Ill. Gen. Assem., Senate Proceedings, March 25, 2004, at 69-70 (statements of Senator Petka).

Considered in concert, these statements strongly suggest a legislative intent to criminalize most instances of firearm possession – absent the special circumstance where a person possessed a weapon out of fear for the safety of his person and his possessions inside his place of ongoing residence, *i.e.*, his home.  Because the affirmative defense statute is *in pari materia* with the unlawful-use offenses and because it uses the identical "abode" language, which the legislature expressly stated came from the unlawful-use offenses and the Criminal Code, we find the legislative history on this point compelling.

Our conclusion is further supported by the fact that equating "abode" with "overnight

Representative Bradley: Sure. It's the home and the private residence, including the yard and the area around the home."  93d Ill. Gen. Assem., House Proceedings, May 13, 2004, at 20 (statements of Representative Rose and Representative Bradley).

living quarters" significantly erodes the purpose of the law and also leads to potentially absurd results. Indeed, accepting defendant's interpretation of "abode" would exclude from prosecution any individual who could plausibly show that he had either spent the night or intended to spend the night at the place of his arrest.

Moreover, such an interpretation potentially results in homeowners unwillingly and unwittingly providing safe harbor to any overnight guest who, unbeknownst to them, brings a weapon into their home. More troubling still, it implicitly condones the transportation of a weapon from one's usual place of residence to any place of temporary sojourn, regardless of whether that sojourn was planned or merely a matter of a defendant fortuitously falling into the exception at the time of his arrest. *Cf. McQueen v. State*, 76 Tex. Crim. 636, 638, 177 S.W. 91, 92 (1915) (holding that an exception to a similar unlawful-use offense which permitted possession of a weapon at one's place of business or residence also implicitly permitted an individual to carry a weapon between one's place of business and residence). Because this interpretation would be at odds with the law's purpose of protecting the public and police officers – absent the special circumstance when possession is limited to the confines of a person's place of ongoing residence – we are unpersuaded that the legislature intended "abode" to mean any "overnight living quarters" in which a defendant finds himself at the time of his arrest.

Defendant contends, however, that the legislature would not have defined "dwelling" in the Criminal Code only to use a synonym for it. Specifically, section 2-6 of the Criminal Code defines "dwelling" as "a building or portion thereof, a tent, a vehicle, or other enclosed space which is used or intended for use as a human habitation, home or residence." 720 ILCS 5/2-6

12

1-05-3782

(West 2002). Defendant asserts, relying on *Taylor*, that the legislature could not have intended for "abode" and "dwelling" to be synonymous. See *Taylor*, 28 Ill. App. 3d at 187, 328 N.E.2d at 326. Accordingly, he argues that "abode" must mean "overnight living quarters." Defendant also appears to assume, as did the *Taylor* court, that the Criminal Code's definition of "dwelling" is synonymous with "residence." See *Taylor*, 28 Ill. App. 3d at 187, 328 N.E.2d at 326 (equating the two terms).

We disagree. The legislature's definition of dwelling is not synonymous with residence or abode. To the contrary, the legislative definition of "dwelling" in the Criminal Code sweeps so broadly as to include any possible location fit for human habitation. See 720 ILCS 5/2-6 (West 2002). Accordingly, "abode," when given its ordinary meaning, is far from synonymous with the statutory definition of "dwelling"; instead, it serves the necessary purpose of substantially limiting places where individuals may lawfully possess a firearm. Indeed, ascribing "abode" the *Taylor* court's definition of any "overnight living quarters" has the perverse effect of making the word synonymous with the statutory definition of "dwelling" – the exact result that the *Taylor* court wished to avoid. *Taylor*, 28 Ill. App. 3d at 187, 328 N.E.2d at 326.

Further, the legislature's use of "abode" in the unlawful-use offenses rather than "residence," which the legislature frequently has used in other statutes, adds nothing to defendant's reliance on *Taylor*. Although, as our discussion above indicates, "abode" may be equated with "residence," the legislature is not precluded from using synonyms across the entire body of law it passes. To the contrary, while it is often assumed that the legislature does not use synonyms within the context of a single statute or a single offense, it cannot follow that the

13

legislature never uses synonyms in any of its statutory enactments. *Cf. Hirschfield v. Barrett*, 40 Ill. 2d 224, 230, 239 N.E.2d 831, 835 (1968) (holding that the "presence of surplusage *** is not to be presumed in statutory or constitutional construction"). The word "residence" does not appear in any statute relevant to the unlawful-use offenses. The only uses of "residence" to which defendant calls our attention are in election and divorce statutes. See *Clark v. Quick,* 377 Ill. 424, 426-27, 36 N.E.2d 563, 565 (1941); *Cohn v. Cohn*, 327 Ill. App. 22, 24, 63 N.E.2d 618, 619 (1945).

We find no merit in distinguishing between terms used in statutes that are not *in pari materia.* We therefore decline to follow *Taylor*'s definition of "abode" as "overnight living quarters." *Taylor*, 28 Ill. App. 3d at 187, 328 N.E.2d at 326. Our decision to depart from *Taylor* is bolstered by the fact that this court has previously held that *Taylor*'s discussion of the "abode" element is dicta. See *Chmilenko*, 44 Ill. App. 3d at 1062-63, 358 N.E.2d at 1249-50.

Defendant's final contention on this issue is that because the legislature used the word "home" in a 1925 weapons statute and later replaced that word with "abode" in the 1961 unlawful-use statute (which superceded the 1925 statute), the legislature must have intended a definition of "abode" similar to "overnight living quarters," *i.e.*, a definition distinct from the meaning of "home."

Defendant reads too much into the legislature's use of "home" in the 1925 statute. The offense enumerated in the 1925 statute made it unlawful to "carry or possess [a dangerous or deadly weapon] *with intent to use the same unlawfully against another.*" (Emphasis added.) 1925 Ill. Laws 339-40 (§1). By contrast, the unlawful-use offenses that replaced the 1925 act dispatched with the intent requirement entirely. See 720 ILCS 5/24-1, 24-1.6 (West 2002).

14

These offenses are therefore strikingly dissimilar in nature.

Also unlike the 1925 act, the unlawful-use offenses use "abode" in the substance of the offense, which, as noted above, makes it an element of the offense that the State must prove beyond a reasonable doubt. See 720 ILCS 5/24-1, 24-1.6 (West 2002). In the 1925 act, however, the legislature used neither "home" nor "abode" in the substance of the offense. 1925 Ill. Laws 339-40 (§1). Instead, the legislature merely stated in a different section of the act that the "provisions of this Act shall never be construed as depriving any citizen of the right to keep in his home *** any firearm reasonably necessary for the protection thereof." 1925 Ill. Laws 341 (§7). Because the connection between "home" in the 1925 act and "abode" in the unlawful-use offenses is tenuous at best, we find no significance in the legislature's differing choice of language in these two acts.

In sum, we hold that the ordinary meaning of "abode" is a place of residence where an individual maintains substantial and long-lasting contacts – *i.e.*, his home – and that the legislature intended this definition when it used the word "abode" in the unlawful-use offenses. Although under this definition it is true that an individual may have more than one abode, it does not follow that any place a defendant spends the night as a guest qualifies as his abode.

In the instant case, by defendant's own admission, he was never anything more than a guest at 11135 South Ashland. He does not contend that he lived there. Further, he does not contend that he kept a substantial portion of his belongings there; he instead merely asserts that, as an overnight guest, he likely had some belongings on the premises. We decline to hold that the mere possibility that a self-proclaimed guest might bring some personal effects with him when visiting a place constitutes establishing such substantial and long-lasting ties with a place

as to make it his abode. Accordingly, we affirm defendant's conviction for aggravated unlawful use of a weapon because he possessed a firearm while not in his abode.

II. Whether Defendant's Sentence Was Excessive

Defendant next asserts that the term of probation imposed by the trial court was excessive. Specifically, defendant argues that the trial court failed to properly consider mitigating factors when it sentenced him to 30 months' probation for an offense that carries a penalty of up to 3 years' imprisonment. See 730 ILCS 5/5-6-2(b)(2), 5-8-1(a)(7) (West 2004). This sentence, defendant contends, is excessive because it does not reflect his background and excellent prospects for rehabilitation. Accordingly, defendant urges us to find that his sentence constitutes an abuse of discretion by the trial court.

The State counters that defendant failed to properly preserve this issue for appeal when he neglected to file a motion to reconsider his sentence. Under section 5-8-1(c) of the Unified Code of Corrections, a defendant challenging his sentence must file a motion to reconsider within 30 days of sentencing. 730 ILCS 5/5-8-1(c) (West 2004). Relying on *People v. Reed*, 282 Ill. App. 3d 278, 280, 668 N.E.2d 51, 53 (1996), the State asserts that this oversight means defendant forfeited his right to appeal his sentence.

We agree with the State. In *Reed*, the Illinois Supreme Court considered whether filing a motion to reconsider a sentence is a prerequisite for challenging a sentence on appeal. *Reed*, 282 Ill. App. 3d at 279, 668 N.E.2d at 52. In ruling that the relevant language of the act was mandatory rather than permissive, the court held that two defendants who had failed to file motions to reconsider within 30 days of sentencing pursuant to section 5-8-1(c) of the Unified

16

1-05-3782

Code of Corrections had forfeited their rights to appellate review of their sentences for abuse of discretion. *Reed*, 282 Ill. App. 3d at 280, 668 N.E.2d at 53.

Here, defendant's sentencing took place on November 7, 2005, and defendant filed his appeal to this court the following day. No motion to reconsider the sentence was ever filed, and, therefore, defendant forfeited his ability to challenge his sentence on appeal.

Nevertheless, defendant argues that we still have authority to reduce his sentence because the trial court's imposition of 30 months' probation was plain error. The gravamen of defendant's argument is that the trial court failed to properly weigh mitigating factors in his favor before imposing its sentence. Because there were no prior convictions on his record, and because he had excellent educational and employment prospects, defendant contends his sentence was plainly erroneous. We cannot agree.

When reviewing a sentence under the plain error doctrine, a court must first determine "whether error occurred at all." *People v. Wade*, 131 Ill. 2d 370, 376, 546 N.E.2d 553, 556 (1989). After finding error, a reviewing court will consider a defendant's challenge to his sentence only when "the evidence is closely balanced or the alleged error was of such gravity that the defendant was denied a fair [hearing]." *People v. Houston*, 363 Ill. App. 3d 567, 576, 843 N.E.2d 465, 475 (2006).

The record plainly shows that the trial court committed no error during sentencing. To the contrary, the trial court adequately considered both aggravating and mitigating factors before imposing its sentence. When asked for mitigating factors, counsel for defendant provided an exhaustive list of factors supporting leniency, including defendant's clean record and his

17

employment and educational prospects. Only after considering these factors and defense counsel's request for probation to "give some structure" to defendant's life to help him become a "productive law abiding member of society," did the court impose its sentence. See also *Houston*, 363 Ill. App. 3d at 577, 843 N.E.2d at 475 (trial court is not required to enumerate each factor considered in arriving at a sentence).

Further, the sentence is not erroneous as a matter of law; to the contrary, it is within the statutory guidelines. The acts relevant to sentencing for a Class 4 felony prescribe a penalty of between 1 to 3 years' imprisonment or a period of probation up to 30 months. See 730 ILCS 5/5-6-2(b)(2), 5/5-8-1(a)(7) (West 2004). Because the trial court considered mitigating factors and because defendant's sentence was within the statutory guidelines, we find no error whatsoever in the trial court's sentencing proceedings or the sentence it imposed.

In conclusion, defendant would have us hold that the trial court committed plain error when it followed the required procedures for sentencing and arrived at a sentence within the statutory guidelines, but sentenced defendant to a term of probation he disagrees with. Because defendant points to no procedural or legal error in the record and because we find none, we must decline this invitation. Defendant failed to file a motion to reconsider his sentence and, therefore, he has forfeited his right to challenge his sentence under a theory of abuse of discretion. See *Reed*, 282 Ill. App. 3d at 280, 668 N.E.2d at 53. Because the plain error doctrine is not coextensive with an abuse of discretion standard of review and because the trial court committed no error, we must affirm defendant's sentence.

1-05-3782

III.  Whether the Trial Court Improperly Imposed Various Fines and Fees

Defendant next alleges that the trial court improperly imposed $120 in fines and fees against him. Specifically, defendant challenges: (1) the assessment of a $5 fee for a violation of the Vehicle Code (625 ILCS 5/1-100 *et seq*. (West 2004)); (2) the assessment of a $100 court systems fine for violating certain sections of the Criminal Code; (3) the constitutionality of the court's imposition of a $10 youth diversion/peer court fee; and (4) the constitutionality of a $5 mental health court fee.

The propriety of a trial court's imposition of fines and fees raises a question of statutory interpretation, which we review *de novo*.  *In re Estate of Dierkes*, 191 Ill. 2d 326, 330, 730 N.E.2d 1101, 1103 (2000).  Similarly, challenges to the constitutionality of statutorily imposed fines and fees raises questions of pure law, which we also review *de novo*.  *People v. Malchow*, 193 Ill. 2d 413, 418, 739 N.E.2d 433, 437 (2000).


A.  The Vehicle Code Fee and the Court Systems Fine

Defendant challenges both the Vehicle Code fee and the court systems fine on the basis that the plain language of neither statute applies to the aggravated unlawful use of a weapon offense.  The statutes provide, in relevant part:

"A county board may enact by ordinance or resolution the following fees:

(a) a $5 fee to be paid by the defendant on a judgment of guilty *** for

violation of the Illinois Vehicle Code *** or similar provisions contained in

county or municipal ordinances committed in the county."  55 ILCS 5/5-1101(a)

(West 2004).

19

"There shall be added to every penalty imposed in sentencing for a violation of Sections 24-1.1, 24-1.2, or 24-1.5 of the Criminal Code *** an additional fine of $100 payable to the clerk." 730 ILCS 5/5-9-1.10 (West 2004).

The State concedes that both the Vehicle Code fee and the court systems fine were improperly assessed. Defendant did not commit any offense enumerated in the Vehicle Code. Further, the aggravated-unlawful-use-of-a-weapon offense is codified in section 24-1.6 of the Criminal Code, which is not one of the offenses enumerated in the statute authorizing the court systems fine. Accordingly, because neither statute applies to defendant's offense, we vacate both the $5 Vehicle Code fee and the $100 court systems fine.

### B. The Mental Health Court and Youth Diversion/Peer Court Charges

Defendant next contends that his state and federal substantive due process rights were violated when the trial court imposed a $10 mental health court charge and a $5 youth diversion/peer court charge. He argues that the assessment of these charges was unconstitutional because neither charge bears a rational relationship to the offense of aggravated unlawful use of a weapon.

The statute authorizing the relevant charges provides:[2]

---

[2] This 2004 version of the statute was in effect at the time of defendant's sentencing. The legislature subsequently amended section (d-5) to allow the funds to finance county drug courts, in addition to mental health courts. 55 ILCS 5/5-1101(d-5) (West 2006). Defendant includes the "drug court" language in his rational basis challenge to section (d-5); however, because that

1-05-3782

"A county board may enact by ordinance *** the following fees:

* * *

(d-5) A $10 fee to be paid by the defendant on a judgment of guilty or a grant of supervision under Section 5-9-1 of the Unified Code of Corrections to be placed in the county general fund and used to finance the county mental health court.

(e) In each county in which a teen court, peer court, peer jury youth court, or other youth diversion program has been created, a county may adopt a mandatory fee of up to $5 to be assessed as provided in this subsection. * * * The fees are to be paid as follows:

* * *

(2) a fee of up to $5 paid by the defendant on a judgment of guilty *** for a felony." 55 ILCS 5/5-1101(d-5), (e) (West 2004).

Defendant argues that no relevant nexus exists between the aggravated-unlawful-use-of-a-weapon offense and the various court systems these two charges finance. Because there is nothing for him to compensate in the areas of mental health or juvenile justice, defendant claims that the fees fail rational basis review as applied to him.

---

version of the statute was not in effect at the time of sentencing, we address only defendant's rational basis challenge as it pertains to the mental health court.

1-05-3782

The State essentially responds that the fees are rationally related to the public interest in deterring the mentally ill and juveniles from criminal activity. Because defendant is a criminal offender, the State argues, it is perfectly rational to require him to pay a fee that will help deter others from following in his footsteps.

A statute is presumed constitutional, and a reviewing court is obligated to construe statutes to "uphold their constitutionality if there is any reasonable way to do so." *People v. Jones*, 223 Ill. 2d 569, 595-96, 861 N.E.2d 967, 983 (2006). When a party raises a substantive due process challenge to the application of a statute, the relevant standard of review is rational basis. *Davis v. Brown*, 221 Ill. 2d 435, 450, 851 N.E.2d 1198, 1208 (2006). Under this court's rational basis review, a challenged statute must bear a rational relationship to a legitimate state interest. *Davis*, 221 Ill. 2d at 450, 851 N.E.2d at 1208.

Since the parties submitted their briefs in this case, the Illinois Supreme Court in *Jones* set out a framework for considering constitutional challenges to statutorily imposed fines and fees. A reviewing court first determines whether the court-imposed charge is a fine or a fee. *Jones*, 223 Ill. 2d at 597, 861 N.E.2d at 985. A "fee" is defined as a charge that "seeks to recoup expenses" that the State has incurred or "'compensat[es]' the State for some expenditure incurred in prosecuting the defendant." *Jones*, 223 Ill. 2d at 582, 861 N.E.2d at 975. A "fine," however, is "'punitive in nature'" and is "'a pecuniary punishment imposed as part of a sentence on a person convicted of a criminal offense.'" *Jones*, 223 Ill. 2d at 581, 861 N.E.2d at 975, quoting *People v. White*, 333 Ill. App. 3d 777, 781, 776 N.E.2d 836, 839 (2002).

*Jones* informs us that a charge labeled a fee by the legislature may be a fine, and vice

22

versa, notwithstanding the words actually used by the legislature. *Jones*, 223 Ill. 2d at 599-600, 861 N.E.2d at 985-86. Accordingly, when determining whether a charge enumerated in a statute is a fee or a fine, under *Jones*, the ordinary meaning of the word used by the legislature "is strong evidence, but it cannot overcome the actual attributes of the charge." *Jones*, 223 Ill. 2d at 599, 861 N.E.2d at 985. Instead, the most important factor is whether the charge "seek[s] to compensate the state for any costs incurred as the result of prosecuting the defendant." *Jones*, 223 Ill. 2d at 600, 861 N.E.2d at 986. If the charge does not compensate for the cost of prosecution, then it is a fine. *Jones*, 223 Ill. 2d at 599-600, 861 N.E.2d at 985-86. Other factors to consider are whether the charge is only imposed after conviction and to whom the payment is made. *Jones*, 223 Ill. 2d at 599-600, 861 N.E.2d at 985-86.

If after considering the factors enumerated above, a court determines that the charge is a fee because it compensates for some cost of prosecuting the defendant, the court applies a rational basis test to establish its constitutionality. *Jones*, 223 Ill. 2d at 595, 861 N.E.2d at 983. If the charge is a fine, however, it is a punishment, and a court may only vacate it if it is disproportionate to the crime because "[a] defendant has no basis for protesting the usage to which his criminal fines are put." *Jones*, 223 Ill. 2d at 602, 861 N.E.2d at 987.

In *Jones*, the defendant raised a rational basis challenge to the trial court's imposition of a $5 spinal cord research fee, arguing that a charge to finance spinal cord research bore no rational relationship to his conviction for possession of a controlled substance. *Jones*, 223 Ill. 2d at 595, 861 N.E.2d at 983. The court did not disagree with the defendant's contention. Instead, however, it held that because spinal cord research bore no rational relationship to controlled substance possession and did not compensate for any cost "incurred as a result of prosecuting

23

1-05-3782

defendant," the charge was in fact a fine, "the label notwithstanding." *Jones*, 223 Ill. 2d at 600, 861 N.E.2d at 986.

The parties do not contest the characterization of the mental health court and youth diversion/peer court charges as fees. Despite this agreement and the legislature's use of the word "fee" in both charges, in light of *Jones*, we are compelled to find that the charges are fines. Contrary to the State's assertion, the nexus between the aggravated-unlawful-use-of-a-weapon offense and the courts financed by these charges is too tenuous to survive rational basis. See *Mathews v. de Castro*, 429 U.S. 181, 185, 50 L. Ed. 2d 389, 394, 97 S. Ct. 431, 434 (1976) (holding that the rational basis standard of review is not "toothless"). We see no relevant connection between the offense committed by defendant and mental health or juvenile justice. Accordingly, because these charges are not rationally related to the possession of weapons and in no way compensate the State for the cost of prosecuting defendant, under *Jones*, they are fines.

Further, the mandatory nature of these charges leads us to the conclusion that they are punishment, *i.e.*, fines, rather than fees. Although the enabling language of the statute is permissive rather than mandatory ("[a] county board may enact by ordinance *** the following fees"), once a county board enacts the ordinance, the language relevant to imposing the charge is mandatory, regardless of how rationally related it is to a qualifying offense. 55 ILCS 5/5-1101 (West 2004). Section 5-1101(d-5) of the Counties Code imposes a $10 charge to be paid "on a judgment of guilty or a grant of supervision under Section 5-9-1 of the Unified Code of Corrections." 55 ILCS 5/5-1101(d-5) (West 2004). Similarly, section 5-1101(e)(2) requires "a fee of up to $5 paid by the defendant on a judgment of guilty *** for a felony." 55 ILCS 5/5-1101(e)(2) (West 2004). Consistent with *Jones*, because these two charges do not even remotely

24

attempt to compensate the State for prosecuting a defendant, but rather impose the same charge for a broad swath of qualifying offenses, we are obligated to find that the charges are fines. See *Jones*, 223 Ill. 2d at 600, 861 N.E.2d at 986.

Because we hold that both the $10 mental health court fee and the $5 youth diversion/peer court fee are fines, defendant's rational basis challenge is inapposite. Under *Jones*, the only remaining inquiry is "whether the amount of the fine[s] is excessive when compared to the criminal conduct in which the defendant is found to have engaged." *Jones*, 223 Ill. 2d at 602, 861 N.E.2d at 988. We find that they are not excessive. Neither a $5 nor a $10 charge is beyond the pale of rational punishment for a Class 4 felony. Here, defendant was tried and convicted of a Class 4 felony that carries a maximum sentence of three years in prison. An additional $15 in fines is in no way disproportionate.

IV. Whether Defendant Was Entitled to Credit for Time in Custody

Defendant's final contention is that the two days he spent in custody prior to posting bail entitle him to a $5-per-day credit against a $4 criminal/traffic surcharge imposed by the trial court.

Section 110-14(a) of the Code of Criminal Procedure of 1963 provides:

"Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. However, in no case shall the amount so allowed or credited exceed the amount of the fine." 725 ILCS 5/110-14(a) (West 2004).

1-05-3782

The surcharge that defendant was assessed provides that there "shall be added to every fine imposed in sentencing for a criminal or traffic offense *** an additional penalty of $4." 730 ILCS 5/5-9-1(c-9) (West 2004).

In *Jones*, the supreme court addressed the precise question presented here, holding that the criminal/traffic surcharge is indeed a fine subject to offset under section 110-14(a). *Jones*, 223 Ill. 2d at 587, 861 N.E.2d at 978. Defendant is thus entitled to a $5 credit for each day in custody. Because defendant accumulated $10 in credit before posting bail, he is entitled to full credit against the $4 criminal/traffic surcharge. Furthermore, we order that the balance of this $10 credit be applied to any remaining fines, including the charges we have held to be fines in section III.B.


CONCLUSION

In summary, we affirm defendant's conviction because he was not in his abode at the time of his arrest. We also affirm his sentence because defendant forfeited his right to challenge his conviction for abuse of discretion and because the trial court committed no error in imposing a sentence within statutory guidelines.

In addition, we affirm the imposition of the $10 mental health court charge and the $5 youth diversion/peer court charge, which we determine are fines. However, we vacate the $100 Vehicle Code fee and the $5 court systems fine erroneously assessed by the trial court. Defendant also is entitled to a $10 credit for his time spent in custody against all fines imposed.

Affirmed in part and vacated in part.

O'BRIEN, P.J., and O'MARA FROSSARD, J., concur.

26