2025 IL App (1st) 231813

FIFTH DIVISION
September 12, 2025

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-23-1813

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 7468 |
| | ) | |
| TAVARES HUMPHRIES, | ) | Honorable |
| | ) | Lawrence E. Flood, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Oden Johnson and Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1     Following a jury trial, defendant Taveres Humphries was found guilty of home invasion and aggravated criminal sexual assault and sentenced to a total of 40 years in prison. On appeal, he contends that he was not proven guilty beyond a reasonable doubt of home invasion when the scene of the offense, the women's bathroom on the floor of the university dormitory where the victim's room was located, could not properly be found to be a part of the victim's "dwelling" for purposes of the home invasion statute. We affirm.

¶ 2                                 I. BACKGROUND

¶ 3     Mr. Humphries was charged with home invasion, aggravated criminal sexual assault, and

aggravated battery following a March 31, 2014, incident. Relevant here, count III for home invasion alleged that Mr. Humphries, who was not a police officer, without authority, knowingly entered the dwelling place of H.L., when he knew or had reason to know that one or more people were present, and intentionally caused bruising and swelling to H.L.'s face and body. See 720 ILCS 5/19-6(a)(2) (West 2014).

¶ 4    H.L. testified that, on March 31, 2014, she attended the University of Illinois at Chicago (UIC) and lived on the fifth floor of a co-ed dormitory, "Commons South." To enter the dormitories, a person slid his or her ID card on the check-in counter and a door would unlock. Each dormitory floor had a women's bathroom and a men's bathroom. The women's bathroom on H.L.'s floor had a door marked "women" and a lock, but the room was kept unlocked.

¶ 5    On March 31, 2014, H.L. went to the women's bathroom, located across the hall from her room. She wore a towel, her glasses, and flip-flops and brought a shower caddy of personal care items. When H.L. entered the bathroom, she heard a shower running. As she entered a shower stall, a man asked for "Casey," and H.L. replied, "There's no Casey here." The man stated that his girlfriend was waiting for him "here." Although H.L. had seen men and women "meet" in the bathroom, she repeated that Casey was not there and that the man had to leave. H.L. identified Mr. Humphries in court as this man.

¶ 6    As H.L. washed her hair, Mr. Humphries again asked for Casey, and H.L. repeated that Casey was not there. Mr. Humphries then asked for soap. H.L. stated that she did not have any and asked Mr. Humphries to leave. He stated that he would "rinse off real quick." When Mr. Humphries again asked for soap, H.L. became scared. She threw a bottle at Mr. Humphries and tried to wash the soap from her hair. Mr. Humphries next asked H.L.'s age. She responded that she was 17 years old. Although H.L. was 18, she thought Mr. Humphries might not hurt her if she

were underage.

¶ 7    Mr. Humphries then jumped into H.L.'s shower stall, and she said, "[g]et out." Mr. Humphries exited, then jumped in again and wrapped her in the shower curtain. H.L. screamed for help, and Mr. Humphries put her in a chokehold. H.L. tried to scratch Mr. Humphries's arms and face and lost consciousness. When H.L. regained consciousness, she was on her back on the floor and felt a "burning pain" in her vagina. Mr. Humphries was on top of her moving back and forth. H.L. screamed for help. Mr. Humphries slapped her, said " 'Shut up you b***,' " and choked her again. H.L. then passed out.

¶ 8    When H.L regained consciousness, she was running past the showers, trying to exit the bathroom. She saw two floormates, David Guerrero and Kendal Henard, and stated that " 'He raped me.' " Ms. Henard took H.L. to a dormitory room. Later, at a hospital, H.L. was examined and evidence was recovered from her body. Her injuries included a cut to the head; bruises to the arm, legs, and neck; broken blood vessels; and cuts to the vagina.

¶ 9    During cross-examination, H.L. testified that she had a key to the bathroom, but that the door was unlocked. A month prior, during a meeting, a majority of the women on the floor voted to keep the door unlocked.

¶ 10    Mr. Guerrero, who also lived on the fifth floor, testified that on the morning of March 31, 2014, Ms. Henard ran down the hallway screaming that " 'somebody's getting raped' " in the women's bathroom. Mr. Guerrero ran to the women's bathroom and heard screams, so he entered. H.L. ran toward him, naked, wet, and crying. A Black man, whom Mr. Guerreo identified as Mr. Humphries in court, was in a corner of the bathroom. Mr. Humphries, who was shirtless, was trying to pull up his pants. Mr. Guerreo told Mr. Humphries to wait for the police, and Mr. Humphries replied that " 'She raped me. She hurt me.' " Although Mr. Humphries further stated that he had

been stabbed, Mr. Guerreo did not see a stab wound or blood. Mr. Humphries stated that he had to go and offered Mr. Guerreo his identification, but Mr. Guerreo again asked him to wait for the police. Prior to March 31, 2014, Mr. Guerreo had never seen Mr. Humphries on campus or on the fifth floor of the dormitory.

¶ 11     A doctor who treated H.L. testified that she underwent a sexual assault kit. H.L.'s injuries included a hematoma to the forehead; abrasions to the face, shoulders, and back; petechia to the face and neck; and swelling to the right knee. H.L. also had a laceration to the posterior "vaginal fourchette," and clear white fluid and blood on the labia majora and minora.

¶ 12     The State presented evidence that a "used" condom was recovered from the bathroom near the shower stalls and that tests revealed H.L.'s DNA on the outside of the condom and the DNA of at least three people on the inside, including H.L. and Mr. Humphries. The State presented additional evidence that no UIC enrollment records existed for Mr. Humphries.

¶ 13     The defense moved for a directed finding as to the home invasion count, arguing that no evidence established that Mr. Humphries entered H.L.'s dormitory room. The court then asked whether "you're saying that the dormitory, which is the exclusive residence of the students who are registered at the university, and the bathroom, which is not a public bathroom, *** is not a dwelling for purposes of the home invasion [statute]?" Counsel responded that the bathroom was public because a student's parents who visited would use it. The court noted that the same argument could be used about a person's house, if a guest used the bathroom.

¶ 14     The State argued that, while a dormitory was not a "a single-family home," the area past the "security area" was H.L.'s dwelling. H.L. lived on the fifth floor, and the bathroom was "for those individuals that lived on the fifth floor." Therefore, when H.L. exited her room, she was still in her "dwelling place." The State asserted that the bathroom was for H.L. and other individuals

on the fifth floor and that Mr. Humphries had no legal authority or permission to be there. The trial court denied the motion for a directed finding on the home invasion count.

¶ 15    Mr. Humphries testified that he sold "pills and drugs" and had regular customers at UIC but was not a student and did not live in a residence hall. On March 31, 2014, he served customers in the UIC computer lab and waited for his customer "Durado" or "David." (Based on context, we assume Mr. Humphries was identifying David Guerrero.). Mr. Humphries then followed a "female in pink" into the dormitory after she swiped. He went to the fourth floor, where he served customers. Then Mr. Guerrero, a customer, gave him a backpack containing laptops, a camera, and a Walkman, as well as a key card because Mr. Guerrero did not have "all the money." Mr. Humphries used the key card to access the fifth floor and "tried to sell some stuff."

¶ 16    Mr. Humphries explained that H.L. and Mr. Guerrero bought narcotics and went with him to the bathroom where they got high. Mr. Humphries and H.L. engaged in consensual sex and showered while Mr. Guerrero was "still getting high." However, H.L. began "hollering" that "they trying to kill me," and Mr. Guerrero tried to leave with the backpack. As Mr. Guerrero left, he started talking about a "rape," and Mr. Humphries and Mr. Guerrero "tussle[d]." Police officers arrived and beat Mr. Humphries. He was also beaten at a police station.

¶ 17    During cross-examination, Mr. Humphries acknowledged that he could not get upstairs without a key card. He asserted that H.L. used Mr. Guerrero's drugs and that the drugs did the "talking," leading to intercourse between him and H.L. Mr. Humphries testified that he did not remember, and did not make, certain statements to a police officer on March 31, 2014.

¶ 18    In rebuttal, the State called UIC police sergeant Braulio DeAnda, who testified that he escorted Mr. Humphries to a hospital for the taking of a buccal swab. Mr. DeAnda was present in Mr. Humphries's hospital room when Mr. Humphries stated that he "choked her a*** out," he

thought "she" was dead, and "she was shaking and foaming at the mouth." Mr. Humphries later stated that he would sue UIC because the security was "not tight enough," which allowed him to enter and "do all the stupid s***." Mr. Humphries also stated that he entered the dormitory when the "desk people" were not looking, that an Asian girl gave him oral sex in exchange for drugs, and that a male customer entered, used the same drugs, choked the Asian girl, and had sex with her while she was unconscious. When Mr. Humphries tried to leave, the man choked him into unconsciousness, had sex with him, and stabbed him.

¶ 19    The State also recalled Mr. Guerrero, who denied (1) ever buying pills from Mr. Humphries, (2) giving Mr. Humphries a bag of items in exchange for drugs, and (3) ingesting pills with Mr. Humphries and H.L. on March 31, 2014.

¶ 20    In closing argument, the State argued, relevant here, that the dormitory building was a "complete living area," which included H.L.'s room and the bathroom. Trial counsel responded that H.L.'s home was her dormitory room, comparable to a hotel room, and no evidence showed that Mr. Humphries entered her room. Rather, the incident occurred in an unlocked "public washroom."

¶ 21    In rebuttal, the State noted that a hotel room includes a bathroom. In this case, H.L. went to her bathroom, which she shared with the other residents of the fifth floor as part of "their dwelling." The State argued that this was not a "public washroom," although the door was unlocked. The decision not to lock the bathroom showed the residents' "false sense of security," but did not imply the bathroom was not part of H.L.'s home.

¶ 22    The jury found Mr. Humphries guilty of home invasion and aggravated criminal sexual assault, and not guilty of aggravated battery.

¶ 23    Mr. Humphries filed a motion for a finding of not guilty or for a new trial, alleging, relevant

here, that a "communal bathroom" was not part of H.L.'s home for purposes of the home invasion statute and no evidence established that he entered H.L.'s dormitory room or had contact with her outside of the bathroom.

¶ 24 The trial court denied Mr. Humphries a new trial. Following argument, the court imposed consecutive sentences of 15 years for home invasion and 25 years for aggravated criminal sexual assault. The defense made an oral motion to reconsider sentence, which the trial court denied.

¶ 25                                II. JURISDICTION

¶ 26 Mr. Humphries was sentenced on March 24, 2023. His late notice of appeal was allowed on October 11, 2023. We have jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and 606 (eff. March 12, 2021), governing appeals from final judgments in criminal cases.

¶ 27                                III. ANALYSIS

¶ 28 On appeal, Mr. Humphries challenges the sufficiency of the evidence regarding his conviction of home invasion. He argues that the State failed to establish beyond a reasonable doubt that the women's bathroom was part of H.L.'s "dwelling" under the home invasion statute.

¶ 29 When reviewing a challenge to the sufficiency of the evidence, the reviewing court considers whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Jones*, 2023 IL 127810, ¶ 28. This court will not substitute its judgment for that of a fact finder regarding the weight of the evidence or the credibility of witnesses and will not retry a defendant. *Id.* We reverse a defendant's conviction only when the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt. *Id.*

¶ 30 To prove Mr. Humphries guilty of home invasion as charged, the State had to prove that

he, who was not a police officer and lacked authority, knowingly entered the "dwelling place" of H.L., when he knew or had reason to know that one or more people were present, and intentionally caused her any injury. See 720 ILCS 5/19-6(a)(2) (West 2014).

¶ 31    Mr. Humphries's sole contention on appeal is that the women's bathroom, on the floor of the dormitory where H.L.'s room was located, was not part of her "dwelling" under the home invasion statute. He argues that the women's bathroom was communal, used by women and men, and not connected to H.L.'s dormitory room and that H.L. could not bar people from the bathroom and did not keep her belongings there.

¶ 32    Pursuant to the Criminal Code of 2012, a " 'dwelling' " is "a building or portion thereof, a tent, a vehicle, or other enclosed space which is used or intended for use as a human habitation, home or residence." See *id.* § 2-6. This court has determined that "the legislative definition of 'dwelling' in the Criminal Code sweeps so broadly as to include any possible location fit for human habitation." See *People v. Price*, 375 Ill. App. 3d 684, 693 (2007) (citing 720 ILCS 5/2-6 (West 2002)).

¶ 33    Neither party cites, nor has this court found, Illinois authority determining whether a university dormitory, or certain parts thereof, constitutes a "dwelling" for purposes of the home invasion statute.

¶ 34    Mr. Humphries asserts that H.L.'s "dwelling," for purposes of the home invasion statute, consisted solely of her dormitory room and that the bathroom was communal and public. The State, on the other hand, contends that the jury could have properly found that the bathroom was a portion of the Commons South dormitory building and intended for use as a human habitation, home, or residence in that H.L. conducted her "hygiene" in the bathroom on the floor where her room was located. We find the State's position persuasive.

¶ 35    A dormitory is defined as " a room for sleeping," and as a "residence hall providing rooms for individuals or for groups usually without private baths." See Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/dormitory (last visited Sept. 4, 2025) [https://perma.cc/FAP4-BM6S]. In turn, a residence hall is defined as a "place where students live at a college or university." See Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/residence%20hall (last visited Sept. 4, 2025) [https://perma.cc/8LG7-5KC4].

¶ 36    Here, the evidence established that Commons South was a UIC dormitory building. Key card access was required to enter the area from which one could travel to the floors where the dormitory rooms were located. Each floor contained student dormitory rooms and single-sex bathrooms. The door of the women's bathroom on H.L.'s floor was marked as such and had a lock but was not kept locked. Accordingly, the jury could have properly found that the women's bathroom on the fifth floor of the Commons South dormitory, the floor on which H.L. lived in a dormitory room, was part of her dwelling for purposes of the home invasion statute in that it was part of her home—that is, where she showered and performed personal care routines. See 720 ILCS 5/2-6 (West 2014).

¶ 37    Mr. Humphries, however, contends that the women's bathroom was "at least a communal area" and "bordered on public." Relying on *People v. Ramsey*, 2018 IL App (2d) 151071, defendant argues that the jury could not have found that the women's bathroom, as a common area, was any part of H.L.'s dwelling.

¶ 38    In *Ramsey*, the defendant, who was convicted of home invasion, argued on appeal that there was insufficient evidence to establish an unauthorized entry into the victim's dwelling. *Id.* ¶ 14. In that case the question was whether the laundry room was part of that dwelling because

that was the place from which the defendant had made an unauthorized reentry. We held that the trial court in the bench trial properly found that the laundry room was not part of the victim's dwelling because, although the victim was allowed to pass through the laundry room to enter his apartment, he was not allowed to use that room to wash his clothes there and he did not leave things there. *Id.* ¶ 21.

¶ 39    Here, unlike in *Ramsey*, there was no dispute that the victim was allowed to use the women's bathroom as a part of her living space. Indeed, that was the only part of that living space in which she could perform essential daily tasks. While that part of the dormitory was a shared space, it was shared with a specific group of people that did not include Mr. Humphries. Simply because the trier of fact in *Ramsey* found that the laundry room was not part of the defendant's dwelling does not mean that the jury in this case could not find that the bathroom was a part of H.L.'s dwelling.

¶ 40    Mr. Humphries also makes an argument based on our supreme court's decision in *People v. Thomas*, 137 Ill. 2d 500, 519-520 (1990), in which the court found that an attached garage in a multiunit structure was "not necessarily" part of a "dwelling" for purposes of the residential burglary statute. Mr. Humphries relies on *Thomas* and on *People v. Cunningham*, 265 Ill. App. 3d 3, 9 (1994), which distinguished *Thomas* because in *Cunningham* the residential burglary was in a garage attached to a single-family home. Mr. Humphries argues that, under the reasoning of these cases, the bathroom cannot be part of H.L's dwelling because there were many other dorm rooms and it would then be part of the dwelling of every individual who lived in Commons South dormitory.

¶ 41    This argument is not persuasive for several reasons. First, *Thomas* and *Cunnigham* address the residential burglary statute, which has its own definition of "dwelling." 720 ILCS 5/2-6(b)

(West 2014). Courts have recognized this is narrower than the definition of "dwelling" for purposes of home invasion and other crimes. See *United States v. Nebinger*, 987 F. 3d 734, 741 (7th Cir. 2021) (definition of "dwelling" in subsection 2-6(a) is "broader" than definition in section 2-6(b) which applies only to residential burglary). More importantly, as *Thomas* makes clear, there is no black letter rule that, in a multiunit building, a garage is never part of the dwelling. Even if there were such a rule, there is a vast and obvious difference between a multiunit garage and the bathroom that is provided to dormitory residents. The bathroom is a far more intimate and necessary space designed and used for "human habitation," which is what a dwelling is defined to include.

¶ 42    The evidence at trial established that, in order to access the dormitory floors where students resided, including the fifth floor where H.L.'s dormitory room and the women's bathroom were located, a person needed to swipe an identification card. Although the women's bathroom on the fifth floor was unlocked, only those authorized by the possession of an identification card could swipe into the portion of Commons South consisting of the dormitory rooms and each floor's bathrooms. There was more than sufficient evidence upon which a rational trier of fact could find that the bathroom was a portion of H.L.'s dwelling and defendant committed home invasion.

¶ 43                                    IV. CONCLUSION

¶ 44    For the foregoing reasons, we affirm.

¶ 45    Affirmed.

___

### *People v. Humphries*, 2025 IL App (1st) 231813

___

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 14-CR-7468; the Hon. Lawrence E. Flood, Judge, presiding. |
| | |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Richard Connor Morley, of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, David H. Iskowich, and Mary R. Hain, Assistant State's Attorneys, of counsel), for the People. |